Atlanta and West Point Railroad Company *vs.* Hodnett.

THE ATLANTA AND WEST POINT RAILROAD COMPANY, plaintiff in error, *vs.* LOVICK P. HODNETT, defendant in error.

| 36 | 669 |
|----|-----|
| 118 | 170 |
| 36 | 669 |
| 128 | 535 |
| 36 | 669 |
| 130 | 7 |

1. By the statute a party is a competent witness; his credit is a question for the jury.

2. A public meeting of the citizens of Troup county was held for the purpose of procuring from the land owners the right of way for the Atlanta and West Point Railroad Company from LaGrange to West Point; agents of the company to procure such rights of way participated in said meeting; speeches were made by one of the agents, by Judge Hill, and others, in which the speakers represented that the Railroad Company would make all crossings and bridges needed by the land owners through whose land the road might pass, and make a turn-out or private depot for those who might need them. The agents of the company adopted these representations of the public speakers, and a land owner, acting on these representations, and understanding that he was to have all these advantages, made a deed without any pecuniary consideration, conveying to the Railroad Company the right of way through his land. The Railroad Company ran the road through his land a distance of two miles, and then refused to make any proper crossings, or bridges, or turn-outs, or depot, or in any way comply with the promises which were the consideration for making the deed. A bill was filed by the grantor to set aside the deed thus procured, on the ground that it was procured by fraud, and to recover damages for the wrongful appropriation of his property by the Railroad Company: *Held*, that it was admissible to show the refusals of the company to comply with the promises made by the agents, as a ground for cancelling the deed; and that the inducements held out in that meeting by the public speakers, under the facts of this case, were admissible for the same purpose.

Equity. Charge of the Court, etc. Tried before Judge WARNER. Troup Superior Court. May Term, 1867.

LOVICK P. HODNETT filed a bill in Equity against said Company, in Troup county, the substance of which is as follows:

He owned certain lands in said county, (hereinafter described,) which he had for many years used as a farm and residence; said company, a body corporate organized to run and keep a railroad from Atlanta to West Point, through its many agents, appointed for that purpose, begged and importuned him to grant them the right of way for said road on

and along said plantation, and represented to him that by the erection of said road great good would come to the public, and especially to the farmers of said county, and that such grant could never injure or damage his plantation or lands, but would greatly benefit them; by said agents, it declared to him and the public, in public meetings called for the purpose, that it would never extend the road through said county unless the right of way was given to it.

These representations were often repeated in public meetings, and private conversations, and letters purporting to be written by John P. King, the President of said company, were read, in which were such like representations roundly asserted to be true.

The company, knowing that he was but little acquainted with such works, and that he had never lived near a railroad, intending and seeking thereby to deceive and defraud him, also, by its agents, distinctly stated to him, among many other false things, that if he would give them said right of way on and along his said lands, the road should be so run as not to injure his plantation nor destroy any of the conveniences of locomotion and cultivation which he then enjoyed.

He then had good private roads from his houses and barns to his fields, which he had long enjoyed, and which were very valuable to him in traversing his plantation; by their agents, they promised not to destroy or injure these ways, but make good crossings for them over their railroad, that his conveniences and advantages in this regard should in no wise be impaired.

They said they would not divert the streams from their channels nor pond the water on his plantation; they promised to build and grant to him a turn-out on said lands, by which he would have an extra car or private depot, where he could, at will, carry his cotton and other marketable produce, and load the car and send his produce to market, and be thereby relieved of the necessity of keeping a market wagon, and have other valuable conveniences, and that they would give him a free ticket over said road. They also represented that such grant would be a public-spirited act, etc.

Believing these representations, and trusting to these promises, he was induced to grant the right of way without any compensation in money, when the same was worth two thousand dollars. He made the deed, but all its recitals as to consideration paid him, are false.

In 1853, the company ran its road over and through his plantation for about two miles in length, and in such a way as to completely divide his fields and cut off from his barns, etc., one hundred acres of his land which was in cultivation, and ran it directly across the road by which he had access to his fields, etc.; they threw up an embankment from nine to twelve feet high across said road, and made no crossing, and thus compelled him to travel around, a distance of five miles, with his wagons and hands in cultivating his lands and hauling in his produce, increasing his time and labor five-fold, (the distance by his old road being less than half a mile). By this a large part of his crop of 1853 rotted in his fields. By this the water was ponded, rendering portions of his land useless, and endangering the health of his negroes.

They have broken all their promises, though often having recognized them, though he has often applied to the company for redress, etc., and now pretend they are under no obligations to repair said mischief. He therefore charges that the deed was obtained by gross fraud.

He prayed that King should answer his bill, for damages for the injury already sustained and for the cancellation of the deed, or that the company be required to repair the injury done in damages, and specifically perform their contract.

The deed attached to his bill as an exhibit was in the usual form, dated the 4th of July, 1850, and so much of it as is necessary to understand this case, was in these words: " Witnesseth, that said Lovick P. Hodnett, for and in consideration of their running their contemplated railroad on and along his land, as well as in consideration of five dollars, etc.,    *    *    hath given, granted, bargained and sold, and doth by these presents give, grant, bargain and sell unto the said Atlanta and LaGrange Railroad Company, and

their successors and assigns, the right of way over which to pass at all times, by themselves, directors, officers, agents, servants and hirelings, in any manner they may think proper, and particularly for the purpose of running, erecting and establishing a railroad with double track and turn-outs, or single track or turn-outs, as may at all times be at the discretion of said company, pursuant to a charter of incorporation granted said company 27th December, 1847, and to this end the limits of said right of way shall extend in width one hundred feet on each side from the centre of the roadway of said railroad when completed, and to extend in length through the whole tract of land owned and claimed by said Hodnett, lying and being in said county, adjoining the lands of Poythress, Henry Long and Shepherd G. Lane, whereon Hodnett now resides, running in such direction through said lands as said Atlanta and LaGrange Railroad Company by their agents, managers or workmen shall think best suited for the purpose of locating and establishing their said work, and connected with said right of way said company shall have the right to cut down and remove all such timbers or other growth on each side of said road as would by falling on or shading the same injure the rails or other parts of said road."

It also, in the *habendum* and *tenendum* clause, contained a provision that the deed should be void in case the road was not built on and over said lands. It was witnessed by Jesse McLendon and another.

To this bill, John P. King, President of the company, filed an answer, substantially as follows: He was ignorant of the truth of most of the charges in the bill. The road runs through the lands of complainant, and he gave the right of way, as did many others from similar inducement, without being begged for it, but as he was informed and believed, voluntarily, and for no other consideration than that expressed in the deed; that he supposes complainant to be as competent to judge of the effects of railroads running through the country or his lands as were his neighbors, with whom complainant co-operated in furnishing aid and inducements for building the road.

Atlanta and West Point Railroad Company *vs.* Hodnett.

He did use arguments, and perhaps wrote letters, to impress the people of Troup county with the importance of railroad facilities to their section of country, but gave no opinion which he did not honestly believe, and made no promise which had not been honestly performed.

Complainant never made any complaint to him as President, or to the Board of Directors, as such, of any injury, nor requested any compliance with a violated contract, until the commencement of this suit; had he done so, he (King) would have, without regard to legal obligation, made every effort to render the exercise of their rights as little as possible inconvenient to him.

The extraordinary privileges and benefits claimed by complainant were too unreasonable to have been made or accepted without putting them in writing, and he did not believe they were promised by any authorized agent of the company; there is no fact known to him, nor does he believe any fact exists, putting this deed on different ground from other voluntary gifts of public-spirited citizens of Troup county. He has always been willing to give complainant the customary free ticket for a limited number of years, and to make convenient and necessary crossings when not claimed at unreasonable places. He denied all fraud or deception and unauthorized injury to complainant by the company or its agents. He prays to be discharged, and that complainant pay the costs.

Thus stood the pleadings in 1854. In 1857 it was agreed by the parties that Jesse McLendon should answer the bill, he being one of the directors of the company.

He filed an answer, admitting that great efforts by speeches, arguments and conversations were made, to get the right of way *gratis*, that no money was paid to Hodnett for his grant, that the deed was as set forth, and was taken on the day of the public meeting and after it, that the road was built through Hodnett's land in 1853, and extended across his farm perhaps over a mile but less than two miles in length, and that by all it was represented that the price of lands would be increased and other benefits would flow to the farmers of Troup county by building the road.

He answered that the two engineers of the company, Wm. F. Fannin, himself and Orville A.. Bull, were the only persons authorized to act for the company; that Hodnett may have been approached by these, and was by himself asked for the right of way, and persuaded to give it, and not only freely gave the same, but was an active advocate, trying to induce others to do so. But he did not believe any one told Holdnett that the road would not damage his plantation or lands or destroy his conveniences of locomotion and cultivation. It would be impossible to build a road without some injury to lands over which it passed, but that damage is usually counterbalanced by the increased value of the lands, which was in this instance twenty-five per cent.

He believed no authorized person ever stated that the road would not be built unless they got the right of way *gratis:* volunteer talkers may have said so. King's letters only amounted to an undertaking to get up the stock to complete the road, if the citizens of Troup would give the right of way. He knew nothing of any representation by defendant or its agents that Hodnett's roads should not be injured or destroyed, or that they would make crossings over the railroad. Such promises, except as to necessary crossings and stock-gaps, would have been foolish, and he did not believe they were made. The engineers and himself may have promised these necessary crossings and stock-gaps while they were building the road.

He did not believe any promise was made not to pond the water; at the date of the deed, though experimental lines had been run, no one knew where the road would be made.

He believed that the sole consideration for the deed from Hodnett, was to aid in the public and private good to flow from the road. He, as defendant's agent, took the deed, and had no recollection of any promise or assurance to Hodnett, at that time or before, that in consideration of his gift the company would grant him any privilege whatever; nothing was said about crossings, nor about disturbing the conveniences and privileges which Hodnett had before enjoyed, nor about building him a turn-out or granting him an extra car

Atlanta and West Point Railroad Company *vs.* Hodnett.

or private depot, nor about a market wagon and team, nor about a free ticket. The facts were, that some time previous to the excution of the deed, at a public meeting of the citizens in LaGrange, Hodnett (and other land owners) had subscribed to a paper giving the right of way over their lands, and shortly afterwards he called on Hodnett for the deed, and he executed it without a word of objection or asking or receiving any promise or assurance at that time by any officer or agent of the company.

It is admitted that one field and part of two others of said farm are separated from the houses, etc., by the railroad; that the road crosses the old ways, and compelled Hodnett to go around to haul his crops home, but he could ford the creek and go to cultivate his crop without thus going round. About this want of a crossing, to save this circuitous route, Hodnett had complained, but demanded nothing but the crossing, (until this bill was filed,) so far as McLendon knew, and the company had promised nothing but this crossing, and that they would have made, but Hodnett would not have it at a proper place, but wished it where it would be very expensive, etc.

And these promises were made after the deed, and mostly after the road was built, and as a matter of favor. The crossing which they proposed to make would have saved this hauling around, and would have been almost as convenient as at the place Hodnett wished it, but he would not have it unless at the place designated by himself. It is admitted that they have not given him any of the things he says they promised, but all such promises are denied. All fraud and misrepresentation is denied. He insists for the company that the deed expresses the true contract, (except as to the pecuniary consideration,) and prays judgment for costs.

This case had been tried once, and a new trial ordered by the Supreme Court. (See 29th Ga. Rep., 466.)

On this new trial, after the bill and answers had been read, complainant introduced Hiram Dennis, who testified as follows: I was in a public meeting of the citizens of this county in 1850, and Hodnett was there. I have forgotten

some things, but I recollect that Judge Hill spoke, and that McLendon was there. Hill spoke of the great advantages of railroads, and urged upon the citizens to give the right of way from LaGrange to West Point.

At this point complainant proposed to prove what Judge Hill said the company would do. Defendant objected. The Court ruled that the declarations of the public speakers would not be binding on the railroad company unless made by its authorized agents, or adopted or ratified by them, and heard the testimony, and defendant excepted.

Dennis then stated that McLendon and Fannin were the agents of the company for obtaining the right of way, and were both in the meeting when the speeches and declarations were made in regard to the right of way, and expressed no dissent, but proceeded to obtain signatures for the right of way for the road. McLendon was then acting for the road to get the right of way. Fannin spoke, and he and McLendon each had a list for subscriptions. McLendon and Fannin made no objections as to what had been said by Hill. They asked for subscriptions.

The speakers said the railroad would enhance the value of lands and save hauling, said the company would leave crossings and build bridges, so that we could get through fields as before.

He did not hear them say anything about private depots. They said they spoke in behalf of the company. Hill said he had some letters, or a letter, from Judge King. Hill said that the railroad would be of great advantage to the people of the country; he said nothing as to depots or turn-outs, but that the company would make crossings and bridges.

The witness then proceeded to show that the railroad divided Hodnett's farm and caused extra hauling; that after the road was built Douglass had put up a bridge which was worthless, etc., and gave his estimate of damages done to Hodnett by the road.

During this examination, the Court was requested to make complainant elect whether he would proceed for a recision of the contract or its enforcement. The Judge did so, saying

that, in his opinion, this was a bill for a recision of the contract on the ground of the alleged fraud in procuring the deed, and must be tried on that issue, and it was in that view alone the parol evidence was admissible.

The complainant was then introduced, and testified that he made the deed on the day of the meeting, and got no money for it; the citizens were called together for a railroad meeting, and speeches were made. McLendon and Fannin said the railroad would not be built unless the right of way was given; he did not recollect being there but once at a public railroad meeting before he made the deed; he was on the committee appointed by the meeting to get the right of way; from his understanding of the speakers, he was to have a turn-out or platform, as he pleased, and a free ticket for himself and family, without limit as to time.

He was asked the value of such ticket and turn-out. Defendant objected. The objection was overruled, and defendant excepted. He then stated that the ticket would be worth $15.00 or $20.00 per annum; that he was to have the privilege of a car at the turn-out at which to load, (he was to ship wood, etc.,) and the turn-out was worth fifty dollars per year.

While Douglass was laying the track, he said, "Let me get through to West Point, and I will come back and fix your crossing all right."

This was objected to, but the Court allowed it because Douglass was proved to have been defendants' engineer and agent.

He testified that he would not have signed the deed without said promises made by the speakers, and the deed was made soon after the meeting, and McLendon as agent of the company took the deed.

On cross-examination, he stated that all the sayings testified to as inducements to make the deed, were said by the speakers before the deed was executed, that nothing was said by the speakers as to him individually having a turn-out, the remarks were general; the speakers said those who gave the right of way would get privileges and get their property enhanced in value, and he thought they said such would get free tickets;

he understood Judge Hill to say that such would have a turn-out and car, that the citizens would have to load the car. Nothing was said about these things when he signed the deed. He also stated his damages, etc.; that he was on the committee to get right of way, and promised to each one who gave it a turn-out and car, and most of the land owners to West Point gave it.

Dr. R. A. T. RIDLEY testified how bad was the way and what was the distance around after the road was built, etc., and that he told Douglass of it, and he said something about a difficulty with Hodnett, and as soon as that was settled he would put up a bridge. This was allowed over the objection of defendant, and defendant excepted. He also stated that Judge Hill, in his speech, said something about free tickets, he thought; that Douglass built a poor bridge, and gave his opinion and reasons therefor as to the damage.

Complainant examined also Mr. Greenwood and John Dennis as to the value of the right of way, and the inconveniences and damages, and closed.

The defendant offered no testimony.

The Court charged the jury that if they should believe, from the evidence, that the deed from the plaintiff to the right of way through his land to defendant was procured by the false or fraudulent representations of defendant or its authorized agents before and at the time of its execution, and that the same would not have been executed by plaintiff to defendant but for such false and fraudulent representations made by defendant or its authorized agents, then they might find and decree that the deed be set aside and cancelled; but if they should believe from the evidence plaintiff voluntarily executed the deed to the right of way through his land, without any false or fraudulent representations made by the defendant or its authorized agents to induce him to do so, then they might find for the defendant; for in absence of fraud in the procurement of the deed, the deed itself was the highest evidence of the contract between the parties, and however hard it might operate upon the rights of plaintiff, he is bound by it, as Courts do not make contracts for parties.

Atlanta and West Point Railroad Company *vs.* Hodnett.

Fraud must be proved and not presumed, without facts are proved from which fraud may be presumed.   What facts (if any) have been established by the evidence from which fraud may be presumed in the procurement of the deed?   Defendant's answer, responsive to the bill, is evidence for it, and when the answer denies the fraud, no decree can be made against such denial, unless controverted by two witnesses, or one witness and other corroborating circumstances.   The complainant is made a competent witness by statute, and it is for the jury to say what credit they will give to his evidence.

In considering this branch of the case, such parts of defendants' answer as are not directly responsive to the allegations in the bill or explanatory thereof, are not evidence for defendant.   If the jury should believe from the evidence that the deed should be set aside for fraud, then they may assess the damages proved to have been sustained by plaintiff for the use and occupation of his land by defendant, and may also find the former value of the right of way through plaintiff's land for defendants' road, and by their verdict confirm the defendants' right of way over the plaintiff's land, for it is the object of a Court of Equity, when it gets jurisdiction of a case, to do full and complete justice between the parties.

The jury set aside the deed, and found for damages $2,116.00, and found $1,000.00 for the right of way, and confirmed defendants' right to the same.

The defendant complains that the Court erred—

1st. In admitting the sayings of Judge Hill and the other speakers at the meeting in LaGrange.

2d. In admitting the sayings or promises of Douglass.

3d. In admitting evidence of the value of the free ticket and turn-out.

4th. In charging that complainant could be counted as a full witness to overturn the answer.

5th. In his charge as to proving fraud, in adding, "without facts are proved from which fraud may be presumed."

6th. In charging that complainant could have a decree for the value of the right of way if they set the deed aside.

A. W. HAMMOND & SON, for plaintiff in error.

B. H. HILL and B. H. BIGHAM, for defendant in error.

WALKER, J.

While it is a general rule that a deed will not admit of parol stipulations being introduced into it, except in case of fraud, accident or mistake, (Logan vs. Bond, 13 Ga. R., 192,) yet the recital of the payment of the consideration may always be enquired into. Harwell vs. Fitts, 20 Ga. R., 723; Martin vs. Gordon, 24 Ga. R., 533. Fraud vitiates all contracts. Coffee vs. Newsom, 2 Kelly's Rep., 442. Upon the trial of this case, the Court, at the instance of plaintiff in error, forced the plaintiff below to proceed for a recision of the contract, on the ground of fraud. The parol evidence admitted on the trial was for the purpose of showing that the deed for the right of way was obtained by fraud, and that complainant had sustained damages by the wrongful use of his land by the railroad company. The issue was fraud or no fraud, and that was a question for the jury. In determining that question, it was their duty to pass upon all the evidence introduced before them.

1. By the statute, the complainant is made a competent witness, his credit being for the jury. The Courts must consider and treat him as a witness, because the Legislature has said so. This is reason sufficient.

2. Whether the consideration moving complainant to make the deed was public spirit, and a desire to enhance the value of his property, and that of his neighbors by securing the construction of the railroad, or the other inducements of a turnout, bridges, crossings, free tickets, etc., was a question for the jury. It is very certain no money was paid. Doubtless complainant expected to be benefitted personally, or he would not have made the deed. If, as the jury have found, and there is testimony to sustain the finding, the representations were made,

as he swears, to induce him to make the deed, and he, acting on these representations, did make it, would it not be a fraud on Hodnett to permit the company to hold on to the deed and not comply with the promises made as to the inducements thereto? The company took possession of his property and have used it for about fifteen years, greatly to his damage, and claim they have a right to do so, notwithstanding the jury have found that the deed was procured by fraud.

It is insisted, however, that the evidence proving that fraud should not have been admitted. The spirit of our legislation is not favorable to the exclusion of testimony. The course of legislation on this subject is in favor of opening all the avenues which lead to truth, and admit light from every possible source, so as to enable the jury by their verdict indeed to speak the truth of the transaction. Take the facts of this case. A public meeting was called for the purpose of procuring the right of way; the agents of the railroad company appointed for the purpose of getting up rights of way, were in that meeting; one of them made a speech; Judge Hill, a man of great influence in the community, made a speech and read letters from Judge King, the President of the company; the agents of the company proceeded in the meeting to obtain signatures for the right of way, each having a list of subscriptions, making no objections to the promises of Judge Hill, but went on the same day and took the deed from complainant, with a full knowledge of the promises made by Judge Hill, and were the inducements which caused the complainant to make the deed, and then say that these representations are not competent evidence! We do not so understand the rules of equity. The representations were made by those acting in behalf of the company, they caused the complainant to make the deed, the company received the deed and enjoyed the benefits accruing under it, and insist that nothing shall be paid for it, notwithstanding the agents of the company heard the promises made to the land holders, and knew that the deed was made on the faith of these representations. Under the circumstances, the speeches made in that meeting, and the inducements there held out to the people, were made

44

in effect by the agents of the company, for they were made in their presence, for the advancement of their undertaking; they were taking subscriptions and deeds for right of way; and thus in all the length and breadth of representations made by Judge Hill and others in the meeting, adopted and ratified them as the representations of the agents themselves.. The company having thus induced the complainant to convey the right of way, should have complied with the promises made; or if the agents had no authority to bind the company, as they proposed to do, then the company should have repudiated the action of its agents, and returned to the complainant the deed which he had made. Instead of doing this, however, they hold on to the deed, make the road, stop up complainant's passway to his farm, causing him to travel five miles, instead of one, to get to his fields, pond up the water, make no bridge or crossing, or in fact do anything which they promised. Such conduct showed a disregard of the rights of the citizen, and ought to be visited with pretty heavy penalties. The jury, under the facts, gave a small verdict in favor of complainant, and the defendant should be well satisfied that it is not considerably larger. I think the testimony would have well warranted a much larger verdict. One has no right to appropriate the land of another without his consent, and without compensation. When the company accepted the deed and took the complainant's land, it should have paid him for it in the manner promised by its agents, or surrendered up to him the land obtained from him by this fraud. Where the principal by subsequent approbation adopts the agent's act, the act then becomes that of the principal, and this approbation will be inferred whenever the principal avails himself of any advantages to be derived from the transaction. Hov. on Frauds, p. 145. In equity a corporation may be bound by a contract made on their behalf before they were fully constituted a corporate body, *if they have had the benefit of it as a corporation;* thus an agreement made by the projectors of a railway company, on behalf of the projected company, was held to bind the corporation, they having enjoyed the benefits of it. Grant on Corp., p. 294, citing

Edwards vs. Grand J. R. R. Co., 7 Sim., 337 ; S. C. 1 My., &c., 650.

But does a case so plain need any authority to sustain it ? The railroad company have a deed which the jury have found was procured by fraud.   The company do not pretend that they ever paid a cent for it, except the locating of the road on the complainant's property.   It is not right that the company should keep the property and not pay for it.   They refuse to pay as they contracted, then the jury did right to set aside the deed and award damages to the plaintiff for the wrongful use of his property.

We approve of the direction given by the Court in relation to the right of way.   The road needs the right of way, and as equity does complete justice, it was proper that the whole dispute should be settled by one decree ; and therefore the assessment by the jury of the damages for the right of way was right and proper.   Equity having obtained jurisdiction, very properly retained it and settled the whole matter between the parties, so that there should be an end of litigation in relation to this transaction.

Judgment affirmed.