TEXAS & P. RY. CO. v. SCOTT.

(Circuit Court of Appeals, Fifth Circuit. December 1, 1896.)

No. 483.

1. RAILROAD COMPANIES — RIGHT OF WAY — ADVERSE POSSESSION — CONTRACT VOID UNDER STATUTE OF FRAUDS.

In 1856, one S. made a verbal contract with a railway company to give it a right of way over his land if the company would establish a depot at a certain point on such land. The railroad was built on the land, and the depot established and maintained for 36 years, during which also the railway company, and another company with which it was consolidated, and which succeeded to its rights, continued to use the track built on S.'s land in the usual manner, without controversy or dispute as to their right. *Held*, that the contract between S. and the railway company being void under the statute of frauds, and the right of action to recover the right of way occupied by the railway company, or its value, having accrued at once, the railway company's possession during the 36 years had been adverse, and it had acquired, by limitation and prescription, the right to an easement in the land.

2. SAME—AGREEMENT TO BUILD DEPOT—ABANDONMENT.

At the end of the 36 years, the depot was abandoned, for reasons connected with the company's interests and the public convenience. *Held*, that the contract between S. and the railway company, even if valid, did not bind the railway company to keep up the depot forever, but that maintaining it for 36 years, and until the company's interests and public convenience required its abandonment, was a substantial compliance with the terms of the contract.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

T. J. Freeman and F. H. Prendergast, for plaintiff in error.

W. C. Lane and S. R. Jones, for defendant in error.

Before McCORMICK, Circuit Judge, and NEWMAN and PARLANGE, District Judges.

NEWMAN, District Judge. The facts of this case, as gathered from the record, are as follows: In 1856, W. T. Scott, Sr., was the owner of a considerable tract of land on the line of the then contemplated Southern Pacific Railway Company. Scott made a verbal contract with the railway company, by which he gave to the company the right to use a strip 100 feet wide, over his land, for a right of way, if the company would establish a depot at a point on said land now known as "Scottsville," and would further give said Scott and his family free transportation over the road. W. T. Scott, Sr., was a director of the Southern Pacific Railway Company at the time the agreement was made. The railroad was, in the year named, built on Scott's land, in accordance with the agreement, and the depot

was established at Scottsville. In 1873 the Southern Pacific Railway Company was consolidated with the Texas & Pacific Railway Company, and it seems that by this consolidation the Texas & Pacific Railway Company acquired the rights and assumed the liabilities of the Southern Pacific Railway Company. Since the consolidation in 1873, the road has been controlled and operated by the Texas & Pacific Railway Company. In 1892 the station agent at Scottsville and the telegraph operator were removed. No reason is shown in the record for their removal, but it was presumably because, in the opinion of those controlling the company, it was not to its interest longer to keep the agent and the telegraph operator at Scottsville. At the time of this change, in 1892, W. T. Scott, Sr., was dead, and the title to the tracts of land through which the Southern Pacific Railway (now the Texas & Pacific Railway) had been constructed was in R. R. Scott. In January, 1893, R. R. Scott brought suit in the district court of Harrison county, Tex., which was subsequently removed into the circuit court of the United States. This suit seems to have been for damages for breach of contract caused by the removal of the station agent and the operator at Scottsville, and which, it is claimed, practically amounted to a discontinuance of the station.

There was a demurrer to the plaintiff's petition, as follows:

(1) "Because said petition shows on its face that it is a suit on a contract made in 1856, verbally, and not in writing, which was more than thirty-six years before this suit was filed, and therefore said suit is barred by the law of limitation of two years; and said suit is also barred by the limitation of ten years."

(2) "Because said petition shows that said contract was for the sale of real estate, and was not in writing, and was therefore contrary to the statute of frauds, and was therefore void."

(3) "Because said contract was verbal, and not in writing, and was not to be performed in the space of one year from the making thereof, and was therefore contrary to the statute of frauds."

(4) "Because the defendants and those under whom they claim have been in actual adverse possession of said right of way, as shown by the plaintiff's petition, for thirty-six years, wherefore plaintiff's right to recover the land is barred by the law of limitation of ten years."

The demurrer setting up the defense that the contract sued on was void, because contrary to the statute of frauds, in that it was not to be performed within one year, was sustained by the court. The demurrer to the first petition in the circuit court and to the supplemental petition, on the ground that the plaintiff showed no right to recover the right of way, was overruled, and it was held that the plaintiff could recover the value of the right of way occupied by the defendant company on the land described. Subsequently, there was a jury trial, which resulted in a verdict for the plaintiff for the value of the right of way, and, perhaps, for certain damages to the remainder of the land not offset by peculiar benefits to the land resulting from the construction of the railroad. The amount of the verdict was $2,700, with interest from April 1, 1892. On objection of defendant that the verdict was excessive, the court ordered that a remittitur be entered, and judgment be rendered for $1,916, with interest thereon from April 1, 1892, at 6 per cent. per annum, making in all $2,318.26.

The defendant, in the proper time, excepted to certain portions of the charge to the court, and to refusals to charge.

Among the requests refused were the following:

"The jury are charged that in this case the plaintiff cannot recover, because the evidence shows that the defendant company has substantially complied with the contract set out in plaintiff's petition, by keeping the station at Scottsville fully equipped from 1856 up to April, 1892. The jury are charged that the plaintiff in this case cannot recover, because the cause of action is barred by limitation."

"That the contract sued on, as having been made between W. T. Scott, Sr., and the railway company, did not constitute such a contract as ran with land, or created any charge on the land, described in plaintiff's petition, and would not pass to the plaintiff by his acquiring title to the land; but, if any cause of action accrued to any person by a breach of said contract, it would be a suit for damages for breach of said contract."

The other exceptions to the charge as given, and to the refusals to charge, need not be referred to, as the case is presented here. It will be perceived, therefore, that the court held that the contract between W. T. Scott, Sr., and the railway company, for a right of way, in consideration of the establishment of the station and free transportation for Scott and his family, was void; and it was further held that the abandonment of the station in 1892 gave to the then owners of the Scott land the right to recover the value of the right of way, and incidental damages to the remainder of the tract. There is some doubt as to whether this is a suit by R. R. Scott, as purchaser of the land, and certain interveners, children and grandchildren of W. T. Scott, Sr., made parties merely for convenience, and to avoid difficulty in showing title, or a suit by the heirs of W. T. Scott, Sr. The view we take of the case, however, renders a determination of this question unnecessary.

The case presents itself here in a double aspect: First. If the contract between W. T. Scott, Sr., and the railway company is void, has the company obtained the right to an easement over and upon the land by possession and use? Second. If the contract between W. T. Scott, Sr., and the railway company was valid, has it been complied with by the company? The contention for the plaintiff below (defendant in error here) is that the possession of the company of its right of way was a mere license; that it was a tenancy under Scott; and that the establishment and continuance of the depot, and the allowance of free transportation, were in the nature of rent for the right of way; and, further, that the holding of the company was subordinate to, and in recognition of, Scott's title, and not adverse to it. Is this true, or is the opposite contention true, that, under the facts, the company has, by open, peaceable, continuous, and adverse possession, acquired a full prescriptive right to the right of way over the lands? There is no doubt that if the contract between Scott, Sr., and the railway company, under which the company took possession of this land, was void, Scott's right of action to recover the land accrued immediately. There is no question but that the occupancy of the company was open, peaceable, continuous, and uninterrupted from 1856 to 1892, a period of 36 years. Was the possession adverse, so that it would ripen into

title? The company certainly constructed the railroad across this entire tract of land. There were embankments and cuts presumably, and, indeed, according to the evidence. Such work was done unquestionably, as was necessary and usual, considering the nature of the land, to level and prepare it as a right of way, and to construct thereon the track. There seems to have been no controversy and no difficulty whatever as to the rights of the company and Scott and his successors in title, until 1892. During all of this time the railway company kept up this part of its track, and operated its trains over it. As to whether or not these facts constitute adverse possession in Texas will be best determined by the rulings of the Texas courts on the subject.

In the case of Railway Co. v. Gaines, decided by the Texas court of civil appeals, and reported in 27 S. W. 266, the doctrine which seems to control in Texas on this subject will be shown by an extract from the opinion, given at length, as follows:

"A single question is here presented for our consideration, which is: Does the adverse possession and continuous use of a strip of land for 18 years, as a right of way for the operation of trains by a railway company, create an easement over such land by prescription? A good many cases in this state have touched upon this question, but only one case is found where it has been squarely decided. In the case of Railway Co. v. Harris, 2 Tex. Civ. App. 540, 22 S. W. 237, it was held that an easement of a right of way could be acquired by a railway company by prescription in 10 years; that being the time it would take, in this state, to raise the prescription of a grant (Haas v. Choussard, 17 Tex. 590), and the full period of limitation prescribed by our statute (Railway Co. v. Chaffin, 60 Tex. 554). It is settled, we think, in this state, that the public may acquire the right of way for a public road over the land of another by prescription. Franklin Co. v. Brooks, 68 Tex. 681, 5 S. W. 819; Compton v. Bridge Co., 62 Tex. 722; Click v. Lamar Co., 79 Tex. 124, 14 S. W. 1048. We see no good reason why the same principle would not apply to railroads in reference to right of way. We have been unable to find any case, where the necessary requisite exists, that the court has failed to find in favor of an easement. Such authorities from other jurisdictions as we have been cited to, which have decided this question, hold that an easement can be acquired by a railroad by prescription. Organ v. Railway Co. (Ark.) 11 S. W. 103; Cogsbill v. Railway Co. (Ala.) 9 South. 512, and others. And those of our state that have in any way discussed the question, except the case of Railway Co. v. Harris, supra, while not deciding the question, intimate that in a proper case an easement can be so acquired. Railway Co. v. Wilson. 83 Tex. 153, 18 S. W. 325; Railway Co. v. Chaffin, 60 Tex. 554. Then, let us see if the case at bar comes within the rule. What requisites are necessary to create an easement, we think, are fully stated in the case of Railway Co. v. Wilson, supra. The court says: 'The doctrine is well established that the burden of proof is upon the party claiming an easement in the land of another, without any contract or express grant thereto, to establish all the necessary facts from which the right may be presumed in his favor. He must clearly show open and peaceable possession for the full period required under the statutes to preclude a recovery of land against one having no other title, and, at least, with the implied acquiescence of the owner, and that during all such times the use and enjoyment of the right have been exclusive, uninterrupted, and continuous, and under a claim of right adversely to the owner of the fee. If there is a failure to establish any of these essential elements by a preponderance of the evidence, the claim to an easement cannot be maintained.' All of the essential elements have been established, by a preponderance of the evidence, by the railway company in this case. In fact, there is no controversy as to the facts of the case. The railway took possession of the strip eighteen years ago, with the knowledge of the owner; has held adverse possession ever since, using and enjoying the same, which use and enjoyment have been exclusive, uninterrupted, and continuous. In the absence of any direct

testimony, as to the claim of right to the strip, the manner of use and holding is sufficient to base a presumption that the railway was claiming adversely, and was sufficient to put the owners on notice of its claim to an easement in the land. We are of opinion that, under the law and facts, the railway company had acquired an easement in the land by prescription for a right of way."

So here, while there is no "direct testimony" as to a claim of right on the part of the company, there is the fact of the building of the railroad, necessarily at considerable expense, over this right of way, and its open, notorious, and continuous occupancy and use. The conceded facts show a quiet and usual control and use of this property every day for 36 years, while all outward indications point to a belief in the rightfulness and justice of the company's possession. There was no special claim of right in words, but there was this general assumption of right by the acts and conduct of the company. There was no necessity for any special claim of right, for it was never questioned. We think it clear that Scott's right of action against the company as to this easement existed in 1856, and continued all along after that time, and that, this right not having been asserted for 36 years, the company has, by limitation and prescription, acquired the right to an easement over the land, which cannot be interfered with by the plaintiff, either as purchaser or as heir at law of Scott.

Passing from this view of the case, and looking at it in another light, and on the assumption that the contract between Scott, Sr., and the railway company was a valid and binding contract, then what is the legal situation of the parties? Scott allowed the railway company to occupy the land referred to in the verbal contract, and the company established a depot thereon of as complete and satisfactory character as could be claimed, and granted Scott transportation for himself and family, presumably, from what appears, during his life. Was this a compliance on the part of the railway company with its contract?

On the question now presented, the case of Texas & P. Ry. Co. v. City of Marshall, 136 U. S. 393, 10 Sup. Ct. 846, is very much in point. The city of Marshall agreed to give the Texas & Pacific Railway Company $300,000, in county bonds, and 66 acres of land within the city limits, for shops, depots, etc.; and the company, in consideration of the donation, agreed to establish permanently its eastern terminus and Texas offices at that city, and to establish and construct at said city the main machine and car works of said company. The city performed its agreement, and the railway company complied with it on its part by making Marshall its terminus, and establishing its principal offices for Texas and machine shops, etc., at that point. After the expiration of eight years, Marshall ceased to be the eastern terminus of the road, and some of the shops were removed. The supreme court held: (1) That the contract on the part of the railway company was satisfied and performed when the company had established and kept a depot and offices at Marshall, and had set in operation car works and machine shops there, and had kept them going for eight years, and until the interests of the railway company and of the public demanded the removal of some or all of these subjects of the con-

tract to some other place. (2) That the word "permanent," in the contract, was to be construed with reference to the subject-matter of the contract; and that, under the circumstances of this case, it was complied with by the establishment of the terminus and the offices and shops contracted for, with no intention at the time of removing or abandoning them. (3) That if the contract were to be interpreted as one to forever maintain the eastern terminus, and the shops and Texas offices at Marshall, without regard to the convenience of the public, it would become a contract that could not be enforced in equity; that the remedy of the city for breach, if there was a breach, was at law. While it is held that, if there was any remedy, it was at law, by an action for damages, still it is clear, from the opinion of the court, and such is clearly the effect of the reasoning that the city of Marshall had no cause of action. This is said in the opinion:

"It appears to us, so far from this, that the contract on the part of the railroad company is satisfied and performed when it establishes and keeps a depot, and sets in operation car works and machine shops, and keeps them going for eight years, and until the interests of the railroad company and the public demand the removal of some or all of these subjects of the contract to some other place."

There was a much stronger case against the railway company than the case now before the court, in that the agreement there was in writing, and the word "permanent" was used as to the establishment and maintenance of the shops, etc. If there was a compliance on the part of the railway company with a contract such as was that with the city of Marshall, by the continuance of the shops, car works, etc., for eight years, how much fuller compliance is there here, where there is nothing whatever said as to permanency, and where the depot is established and maintained in full compliance with the contract for 36 years, and until the exigencies of business rendered its discontinuance necessary. It may be remarked that no claim whatever is made by counsel for Scott as to that part of the agreement in reference to free transportation over the railway.

To further discuss the case in this aspect would be useless and unnecessary. We think that the decision just quoted from the supreme court, and especially the reasons given by the court for the decision, are conclusive of the question presented here. It cannot be true that an agreement on the part of a railway company to establish a station at a particular point is an agreement to keep it there forever. It must be that such an agreement is made subject to the general exigencies of business, the public interests, and to the change, modification, and growth of transportation routes, as these may affect the requirements of the railway company's business. The contract having this limitation, we think that the establishment of a railway station, and its maintenance, to the full extent expected or claimed, for 36 years, is, under all the circumstances, a substantial and sufficient compliance with the terms of the contract relied on here. So that, viewing this case from either standpoint, assuming the contract to be valid or invalid, we are satisfied that no cause of action is shown against the railway company. The case, therefore, must be reversed and remanded, with directions for further proceedings in accordance with this opinion.