### BEASLEY et al. v. TEXAS & P. RY. CO.

(Circuit Court of Appeals. Fifth Circuit. May 13, 1902.)

#### No. 1,141.

**1. RAILROADS—CONTRACT RESTRICTING LOCATION OF STATIONS—VALIDITY.**
A contract by which a railroad company agrees to establish and maintain a station at a particular place, and not to establish or maintain any other station within a certain distance therefrom, is contrary to public policy, and cannot be enforced in a court of equity; but it would seem that the illegality of the agreement should not deprive one who on the faith of it, and without wrongful intent, has conveyed valuable property to the company, of a remedy at law.

Appeal from the Circuit Court of the United States for the Western District of Louisiana.

Mrs. Matilda R. Beasley, complainant in the circuit court, appellant here, brought her bill against the Texas & Pacific Railway Company, and therein alleged: "(1) That she is the owner in her own separate right of a large plantation in the parish of Caddo, in said Western district of Louisiana, situated on the right descending bank of Red river, in a rich alluvial district. (2) That in the year 1899 a corporation organized under the laws of Louisiana, with its domicile at Shreveport, under the name of the Texarkana, Shreveport & Natchez Railway Company, with G. W. Fouke as president, was engaged in constructing a railway from Texarkana, in the state of Texas, to the city of Shreveport, Louisiana. (3) That the route of said railroad traversed your orator's plantation for a distance of one (1) and five-eighths ($^5/_8$) miles, and through the land of her friend W. F. Dillon for a distance of four and a half miles ($4\frac{1}{2}$), and that the right of way through these lands was well worth more than six thousand dollars ($6,000.00). (4) That, in order to secure said right of way through all of said lands, the said Texarkana, Shreveport & Natchez Railway Company entered into a contract of purchase from orator of a right of way through orator's land for the consideration of five hundred dollars ($500.00), and the further consideration that said railway company shall establish and build and maintain a depot and platform. and a switch and side track, to be not less than fifteen hundred feet in length, at such point upon said strip of land so conveyed as might be designated by your orator, and the further consideration that the said grantee or its assigns shall not build or establish, or permit to be built or established, any other depot along the line of said railroad within three miles north or south of the one above stipulated for, as will be seen

---

¶ 1. See Contracts, vol. 11, Cent. Dig. § 570.

by a duly certified copy of said act of sale, hereto annexed and made a part of this bill; and that the said W. F. Dillon thereupon signed and executed a deed of sale of the right of way through his lands above mentioned, without other costs to said grantee than the considerations above stipulated in favor of your orator. (5) That under said contract the said grantee built its road over said lands, and established and built a depot and switch at Uni Station on said plantation, and your orator spent more than eight thousand dollars for buildings and improvements in the way of building a town, upon the faith that no rival depot would be built or established in less than the distance of three miles. (6) That there is no public necessity or demand for any depot within said limits. (7) That on the 9th day of February, 1901, the said Texarkana, Shreveport & Natchez Railway Company sold said railroad from Texarkana to Shreveport, with all of its right of way and other property and franchises, to the Texas & Pacific Railroad Company, a corporation organized under the acts of congress of the United States above recited in the beginning of this bill. (8) That said Texas & Pacific Railroad Company purchased said railroad and right of way and franchises subject to the obligations and stipulations contained in the said act of sale from your orator, and is bound by the same not to build, operate, or establish a depot on said railroad within three miles of said depot at Uni Station. (9) That, in violation of said contract and obligation, the said Texas & Pacific Railway Company is now constructing a depot on said railroad at a point called 'Belcher,' within less than three miles, to wit, about one and one-eighth (1⅛) miles, from the said depot at Uni Station on orator's plantation, and unless restrained and enjoined by the order and process of this court it will proceed to build and operate said depot in violation of said contract, and that your orator will be damaged by the destruction of the value of improvements placed upon said property, and by the loss of all advantages derived from said contract, amounting to more than fifty thousand dollars ($50,000.00), which loss and destruction of her property will be irreparable, and for which she has no adequate remedy at law, and that this suit arises under the laws of the United States, within the meaning of the act of congress of March 3, 1875, as amended by the acts of congress of March 3, A. D. 1887, and August 13, A. D. 1888." The prayer of the bill was for an injunction pendente lite, to be in due course made perpetual.

The Texas & Pacific Railway Company appeared, and filed a demurrer to the bill, and for cause of demurrer showed: "That it appeareth by the plaintiff's own showing in her said bill that she is not entitled to the relief prayed for therein against this defendant, for the reason that it appears from the allegations of said bill that she has a full, adequate, and complete remedy at law, if any remedy she has, and this court is without jurisdiction; and, further, there being no allegation or averment in said bill that this defendant is not solvent or able to respond to any recovery she may obtain in a court of law." This demurrer was heard, and on argument was sustained by the circuit court, and thereupon the complainant's bill was dismissed; whereupon the complainant sued out this appeal, assigning as error the ruling on the demurrer.

W. P. Hall and E. W. Sutherlin, for appellant.

E. H. Randolph, T. J. Freeman, W. B. Spencer, W. W. Howe, and C. P. Cocke, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). As the circuit court rendered an absolute decree dismissing the bill, which would probably bar proceedings instituted at law for the recovery of damages, it is probable that the court in hearing the demurrer allowed other causes of demurrer to be orally assigned in addition to the cause assigned upon the record. The rule permitting this is thus declared in 1 Bates, Fed. Proc. § 204, as follows:

"A defendant is not limited to one cause of demurrer, but may assign as many causes as his counsel may deem proper, either to the whole bill or to each part of the bill demurred to, and if any one of the causes assigned be held good by the court the demurrer will be allowed; and the defendant may on the argument, at the hearing, orally assign other causes of demurrer, different or in addition to those assigned upon the record, which if valid will support the demurrer, although the causes of demurrer stated upon the record be held to be invalid."

In this court the appellee urges in support of the decree appealed from that the bill is defective, because one of the original contracting parties, the Texarkana, Shreveport & Natchez Railway Company, is not made a party; that the complainant has a complete and adequate remedy at law; and that the contract as alleged, in so far as it stipulates and restricts as to the location of depots along the line of railway, is contrary to public policy and void. As there is no averment that the Texarkana, Shreveport & Natchez Railway Company is doing anything or proposes to do anything in violation of its contract with complainant, and no relief is prayed against said railway company or affecting it, it does not seem to be a necessary party to the suit, and if it is a necessary party the defect can be cured by amendment to the bill.

It is not clear that the complainant has, for the wrong alleged, a complete and adequate remedy at law. Damages are not always easily ascertained, and sometimes do not and cannot adequately compensate. A remedy which prevents a threatened wrong is in its essential nature nearer adequate and complete than a remedy which permits the wrong to be done, and then attempts to compensate by damages assessed by a jury. See 3 Pom. Eq. Jur. § 1357.

These remarks are pertinent to the case in hand, for the bill alleges only indirect and remote damages, and the case presented seems to be one in which before a jury it would be very difficult to point out and prove much if any actual damage. However, in the matter of damages from the threatened wrong in this case, if the bill is defective in not being sufficiently specific or in not alleging direct damage, the complainant might perhaps amend, and, before her bill should be dismissed on that sole ground, she should be given an opportunity to amend.

The objection based on public policy presents the real difficulty in maintaining this bill. The appellee, as owner and operator of the Texas, Shreveport & Natchez Railway Company, is a public common carrier, operating public franchises, and is under duties and obligations to the state and public. Operating in Louisiana and under a Louisiana charter, it is, by article 284 of the Louisiana constitution of 1898, subject, as to the building and location of depots (and in many other matters), to the control of the Louisiana railway commission. Aside from this, it is bound in the public interest, and in its own interest, to establish such stations, and build and locate such depots, along and near the railroad as the convenience to the public, the transaction of business, and the rapid and economical transportation of goods and passengers may require.

In Railroad Co. v. Scott was involved the right of the railway company to abandon a depot originally located, constructed, and maintained in consideration of the right of way granted, and this court said:

"It must be that such an agreement is made subject to the general exigencies of business, the public interests, and to the change, modification, and growth of transportation routes, as these may affect the requirements of the railway company's business." 23 C. C. A. 424, 429, 77 Fed. 726, 37 L. R. A. 94.

In Florida Cent. & P. R. Co. v. State, 31 Fla. 509, 13 South. 106, 20 L. R. A. 419, 34 Am. St. Rep. 30, in dealing with a restrictive contract as to the location of railroad depots, the supreme court of Florida well says, on principle and authority:

"We cannot admit that an individual is entitled to call for the interference of a court of equity to compel a railroad company to locate unchangeably its depot at a particular spot to subserve the private advantages of such individual. Railroad companies, in order to fulfill one of the ends of their creation—the promotion of the public welfare—should be left free to establish and re-establish their depots wheresoever the accommodation of the wants of the public may require. To grant the relief asked for by the complainant we would regard as against public policy. In People v. Chicago & A. R. Co., 130 Ill. 175, 22 N. E. 857, the court says: 'It is in recognition of the paramount duty of railway companies to establish and maintain their depots at such points, and in such manner, as to subserve the public necessities and convenience, that it has been held by all the courts, with very few exceptions, that contracts materially limiting their power to locate and relocate their depots are against public policy, and therefore void.' The same doctrine was announced by Chief Justice Shaw in Fuller v. Dane, 18 Pick. 472; and also in Railroad Co. v. Ryan, 11 Kan. 602, 15 Am. Rep. 357; Railroad Co. v. Seely, 45 Mo. 212, 100 Am. Dec. 369; Currie v. Railroad Co., 61 Miss. 725. In Mobile & O. R. Co. v. People, 132 Ill. 559, 24 N. E. 643, 22 Am. St. Rep. 556, the court says: 'The location of stations for the receipt and discharge of passengers and freight at points most desirable for the convenience of travel and business being indispensable to the efficient operation of a railroad and the enjoyment of it by the public, the railway company cannot be compelled, on the one hand, to locate stations at points where the cost of maintaining them will exceed the profits resulting therefrom to the company, nor allowed, on the other hand, to locate them so far apart as to practically deny to the communities on the line of the road reasonable access to its use. A railway company cannot be compelled to maintain or continue a station at a point when the welfare of the company and the community in general requires that it should be changed to some other point. A railway company cannot bind itself by contract with individuals to locate and maintain stations at particular points, or to not locate and maintain them at other points. The company must be left free to establish and re-establish its depots wherever the public welfare or wants of the public may require.' The same doctrine is held in Holladay v. Patterson, 5 Or. 177, in which case the court says: 'A railroad company is a quasi public corporation, and the public have an interest in the location of their lines of roads and depots. An agreement which tends to lead persons charged with the performance of trusts or duties for the benefit of others to violate or betray them will not be enforced.'"

In Texas & P. R. Co. v. City of Marshall it is held that a contract to forever maintain a terminus, shops, and offices at a particular place, without regard to the business of the company and the interests of the public, is not one to be enforced in a court of equity. 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385.

The present bill alleges "that there is no public necessity or demand for any depot within said limits," i. e., within three miles north and south of Uni Station; but we take this to be largely a conclusion of the pleader, and not to be taken as conclusively admitted by the demurrer. Whether or not the interest of the public or the railway company demands a depot within the said limits is a question involving

facts and judgment which a court of equity, under proper allegations, might perhaps deal with, but which, in our opinion, should be left to the determination of the officials of the railway company under the regulations of the railroad commission. It is not probable, and certainly not to be assumed on a naked allegation, that the railway company will voluntarily locate and build a depot not believed by the officials of the company to be necessary for the transaction and furtherance of the railway's business or the just and proper convenience of the public.

In Texas & P. R. Co. v. City of Marshall, supra, a case much relied upon by both parties, there is an intimation that, while equity will not grant relief in cases of this kind, there may be a remedy at law in an action for damages.

It would seem that where, under a contract which is in part contrary to public policy, a valuable consideration in the way of property has passed, the courts should not deny all relief, and thus allow one party to be enriched at the expense of another not guilty of actual turpitude; and it has been held that where, under a contract absolutely void, because unlawful, a valuable property has been transferred, while no action based on the contract will lie to recover the property, still the right of recovery may be permitted in a proper case, based on a disaffirmance of the contract, because of the desire of the courts to do justice as far as possible to the party who has made payment or delivered property under a void agreement which in justice he ought to recover. See Pullman's Palace Car Co. v. Central Transp. Co., 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108.

The real question presented in the court below, and renewed in this court, is whether the complainant for the matters alleged in her bill can have relief in a court of equity, and it is only incidentally involved here as to whether the complainant for the same matters can have relief in a court of law. For the reasons given, we are of opinion that the complainant can have no remedy in equity. As to the right to a remedy elsewhere, we express no opinion further than as herein outlined.

The decree appealed from is absolute as to the dismissal of the bill, and, as it may be considered a bar to an action at law, it is ordered and adjudged that said decree be reversed, and the cause remanded to the circuit court, with instructions to enter a decree dismissing the bill for want of jurisdiction in equity, and without prejudice to any action at law to which the complainant, as advised by counsel, may think herself entitled.