# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1907.

---

### ATLANTA & WEST POINT RAILROAD CO. v. CAMP.

1. Where, for the purpose of increasing its earning opportunities, a railroad company adopts the policy of offering inducements to procure settlers along its line; and where, in contemplation of such policy, a prospective settler, A, and the railroad company, B, negotiate, A proposing to purchase certain land along the line of road, if B will establish and maintain, during the life of its charter, a station at a point near the land, and B responding that it will establish and maintain, during the life of its charter, a station at a point near the land, and put into effect a schedule under which two trains will stop at the station from each direction daily, if A will purchase the land; and where, induced by such negotiations, the land is purchased by A, and, in pursuance of the same negotiations, B establishes the station and maintains the schedule. such negotiations and actions thereunder are sufficient to constitute a contract binding B for the maintenance of the station and schedule, except as qualified by the ruling announced in the second headnote, and sufficient to give a right of action to A for damages resulting from a breach.

2. The contract by a railroad company to locate a station at a given point is not per se void. Such a contract is enforceable against the railroad company so long as it is possible for the company to discharge the duties owed by it to the public and, at the same time, discharge the duties incumbent upon it by the contract. Whenever a time arrives that the company is hampered, in the discharge of its duties to the public, by its undertaking under the contract to establish the station, the station may be abandoned, notwithstanding the contract, as it is to be presumed that the parties to the contract entered into the same with full knowledge of the duty of the railroad company to subordinate private interests, under contracts made by it, to the public rights, whenever there is a conflict between the same. But in a given case it is incumbent upon a railroad company, before it could be discharged from a contract to locate a station, to establish satisfactorily that there has arisen such a conflict between its public duties on the one hand, and its duties under the contract on the other, that it is im-

possible for it to discharge the former without entirely abandoning
the latter.

3. A judgment of a trial judge, holding that a petition has been framed
in compliance with the pleading act of 1893 (Civil Code, §4961), re-
quiring all petitions to "set forth the cause of action in orderly and
distinct paragraphs numbered consecutively," will not be reversed,
unless it is apparent that there has been an utter disregard of the
provisions of the act.

Argued May 29, 1907.—Decided January 31, 1908.

Action for breach of contract. Before Judge Roan. Camp-
bell superior court. September 27, 1906.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff in error.

*J. F. Golightly,* contra.

ATKINSON, J. 1. In the plaintiff's petition it is alleged, that
the defendant was one among a number of competing railroad
companies for through travel and local business over its line of
railway; that, for the advancement of its interests in that behalf,
the defendant entered upon the policy of encouraging settlers along
its line of railroad, who would beautify their homes; that peti-
tioner did not live on the defendant's road, but was in search for
a place to settle, and advised the defendant of his object. The
defendant then informed petitioner that if petitioner would in-
vest in a home on its line of road and beautify the same, the de-
fendant would offer inducements. Afterwards petitioner ascer-
tained that a certain tract of land on the line of defendant's road
was for sale; that petitioner then proposed to defendant that he
would purchase said tract of land, provided the defendant would
locate thereon a permanent station, to continue during the life of
the charter of the company. In response, the defendant informed
petitioner that if petitioner would purchase the property, defend-
ant would locate the station as suggested, and would commence by
causing two trains per day in each direction to stop at the station,
and that from time to time thereafter the number of trains would
be increased. Upon the faith of the defendant's proposition to
locate the station and stop the trains as already recited, petitioner,
knowing the effect thereof would be to enhance the value of the
property, purchased the property and erected thereon a dwelling-
house at a cost of $4,000. The defendant immediately established
a station in pursuance of its promise, and called it "Camp's,"
and put into effect a schedule requiring two of its trains in each

direction to stop at the station on each day. This schedule was continued for several years. It was also alleged, that, in order to carry out the plaintiff's contract with the defendant, the plaintiff, after building the dwelling-house, made other improvements (which were specified, but are not necessary here to be stated), all of which tended to beautify his home and render the view from the railroad attractive, and to carry out the defendant's policy, to which reference has already been made. After maintaining the station and schedules hereinbefore recited for several years, the defendant wrongfully, without the consent of the plaintiff, abandoned the same. The effect of the abandonment was greatly to depreciate the market value of the plaintiff's property. The suit was for damages for breach of the contract. The plaintiff's entire negotiations were with one alleged to be the industrial agent of the defendant, who, it was alleged, had authority to bind the defendant in making a contract of the character alleged. It was further alleged that after the negotiations between the plaintiff and the defendant, relied upon as showing the agreement which induced the plaintiff to purchase and improve the property, the defendant ratified all of the promises made in its behalf, and, in pursuance of its promises, established the station and put into effect the schedules for the stop at such station of two trains per day going in each direction, as promised by the agent.

The allegations were sufficient to show an obligation upon the part of the defendant to establish a station at a point near the property purchased by the plaintiff, and to cause as many as two trains per day, going in each direction, to stop at such station after it was established. The point is made that the plaintiff only proposed that he would buy land in which the defendant had no interest, if the defendant would establish the station, and that the defendant did not accept the proposition, but submitted a counter-proposition that it would establish the station and maintain a given schedule if the plaintiff would buy the property; in other words, that both parties spoke conditionally, and no agreement to do anything was actually made. The petition as a whole is entitled to a broader interpretation. The allegations are sufficient to show that the parties did more than merely submit the propositions. They understood each other, and, while their propositions were pending, both proceeded to perform in execution of their

understanding. Performance by each was acceptance of the other's proposition. Such acceptance eliminated all conditional features connected with the transaction, rendered certain the intention of the parties, introduced the feature of mutuality, showed the presence of consideration moving each party, showed ratification by the railroad company, and rendered it unnecessary to reduce the contract to writing. In connection with these announcements, it may be noted that the facts in *Swan Oil Co.* v. *Linder,* 123 *Ga.* 554 (51 S. E. 622), present a different case from that under consideration. The case at bar is more like the case of *McCaw Mfg. Co.* v. *Felder,* 115 *Ga.* 408 (41 S. E. 664), and the principles therein announced are applicable here. · *McCaw Mfg. Co.* v. *Felder* was differentiated from *Swan Oil Co.* v. *Linder* in the opinion in the latter case.

With regard to the matter of consideration, it may be further said: Adequacy or inadequacy of consideration is a subject to be considered by the parties at the time they make the contract. There is no law regulating the amount of consideration necessary to support a particular promise. If the parties have capacity to contract, and there is no fraud or misplaced confidence, and there is any valuable consideration, the courts will enforce the contract according to its terms. Under the allegations the defendant anticipated an increase of business resulting from the location of settlers along its line of road. While such increase, resulting from the purchase by the plaintiff of a single tract of land and his settlement thereon, might be inappreciable, it was one of many transactions in contemplation of the defendant, which, if its plan were developed, would tend ultimately to bring about the desired result, that is to say, the increase of its business as a common carrier.

2. It is said, though, that the contract to locate the station and maintain it permanently was contrary to public policy and unenforceable. The question as to how far a railroad company can bind itself in a contract to locate a station at a given point has been the subject of numerous adjudications. There are rulings to the effect that an agreement by a railroad company to locate and maintain a station at a given point is contrary to the policy of the law. Enid Right of Way & Townsite Co. *v.* Lile, 15 Okla. 328 (82 Pac. 810); Pacific Railroad Co. *v.* Seely, 45 Mo. 212

(100 Am. Dec. 369) ; Mobile & Ohio Railroad Co. *v.* People, 132 Ill. 559 (24 N. E. 643, 22 Am. St. R. 556). In these cases and in others that may be cited, the broad rule is laid down that a railroad company has no authority to bargain away its right to locate stations in such manner as the public interests may require, and that any contract locating a station, being in its nature something which might have the effect to hamper the company in the discharge of its duties to the public, and every contract having for its purpose the permanent location of a station, is by its very terms contrary to the policy of the law and unenforceable. This broad rule, however, has not met with general favor. There are also numerous rulings to the effect that a contract by a railroad company, to locate a station at a given point and not to locate any other stations within a given distance from that point, is contrary to public policy and void. Marsh *v.* Fairbury & N. W. Ry. Co., 64 Ill. 414 (16 Am. Rep. 564) ; 26 Am. & E. Enc. L. (2d ed.) 500 ; Williamson *v.* Chicago, R. I. & P. R. Co., 53 Ia. 126 (4 N. W. 870, 36 Am. Rep. 206) ; St. Joseph & Denver City R. Co. *v.* Ryan, 11 Kan. 602 (15 Am. Rep. 357) ; Beasley *v.* Texas & P. R. Co., 115 Fed. 952 (53 C. C. A. 434). The authors of Elliott on Railroads, after referring to the decisions which hold that the contracts requiring a railroad company to establish depots at certain points are against public policy and not enforceable, say that there is a conflict of authority upon the question, and complete their discussion of the matter in the following language: "In our opinion such a contract may be made if no public interest is prejudiced. If the contract is made solely to promote private interests at the expense of the public welfare, the contract should, as we think, be held to be illegal. But if the public interests are not prejudiced, or the power of the company to do what the public welfare requires is not abridged, we believe the contract should be regarded as valid. Many cases hold that a railroad corporation may contract for the erection and maintenance of a station at a certain point, where its right to maintain stations at other points is not thereby impaired. This we believe to be the sound doctrine." 2 Elliott on Railroads, §§ 362, 386. Sound public policy requires that a railroad company should be left free to establish and re-establish its stations wherever the accommodations or the wants of the public may require. The power to locate stations is from its

very nature a continuing one. Mobile & Ohio R. Co. *v.* People, 132 Ill. 559 (24 N. E. 643, 22 Am. St. R. 556). The authorities of a railroad have unlimited power to locate their stations for the best interests of the community and the road, even though a money consideration be paid therefor. Currie *v.* N., J. & C. R. Co., 61 Miss. 725 (20 Am. & E. R. Cas. (old series) 303). An agreement on the part of a railroad company to establish a station at a particular point is not one to keep it there forever, but is made subject to the general contingencies of business, the public interest, and the large modification and growth of transportation routes as they may affect the requirements of the railroad company's business. Texas & P. Ry. Co. *v.* Scott, 41 U. S. App. 624 (77 Fed. 726, 23 C. C. A. 424, 37 L. R. A. 94). In the case just cited it was held that an agreement by a railroad company, in consideration of a right of way, to establish a depot on the land, is complied with by establishing the station and maintaining it upon the land for 36 years, although the depot is then removed on account of the exigencies of business; and in the opinion Judge Newman cites the case of Texas & P. R. Co. *v.* Marshall, 136 U. S. 393 (10 Sup. Ct. 846, 34 L. ed. 385), where it was held that an agreement to locate and maintain the shops of a railroad company permanently at a given point was complied with by the maintenance of the shops at that point for six years, notwithstanding a subsequent removal growing out of the exigencies of the business of the railroad and the changes necessary to be made to discharge the public duties resting upon it; and it was held that the word "permanent" in the contract was to be construed with reference to the subject-matter of the contract, and that under the circumstances the contract with the word "permanent" therein was complied with by the establishment of the terminus and office and shops contracted for, with no intention of removing or abandoning them at the time when so established. The effect of the rule laid down in the decisions just referred to is that when one contracts with a railroad company in reference to those matters where the public is involved, the contract is made subject to the rights of the public; and when the exigencies of the business of the company are such that the rights of the public come in conflict with the rights of the contracting party under his contract, it is to be presumed that it was the intention of the parties that the private

rights under the contract should yield to the public right. In applying what has been said to the present case, it can not be held that the contract between the railroad company and the plaintiff was void per se; for the company had a right to make a contract with the plaintiff to locate a station at a given point, so long as the location of the station did not interfere with the proper discharge of the duties resting upon the company as a quasi public corporation. But the plaintiff was charged with notice of the character of the person he was contracting with, and of the duties which that person owed to the public; and also, in reference to the subject-matter of the contract, that it was connected intimately and directly with the discharge of the duties the defendant owed the public; and therefore it became a part of the contract between the parties that the maintenance of the station at the point was limited, not by the time specified in the contract, but to that time, and to that time only, when, consistently with the discharge of the public duties of the company, the station could be maintained in the manner provided for in the agreement. The petition therefore set forth a cause of action. There is nothing alleged to indicate that the conditions are so changed that the railroad company can not comply with its contract and at the same time discharge all duties to the public which the law places upon it. If that time has arrived, the railroad company may be allowed to show this by an appropriate plea, supported by competent evidence. This is a matter of defense. The question with which we have dealt in the present case has never been directly passed upon in any case decided by this court; but cases involving contracts for the location of depots, stations, lines of road, etc., have been before this court where other phases of the law were involved, and in some of them contracts of the character above indicated have been tacitly recognized as being valid. See *A. & W. P. R. Co.* v. *Hodnett*, 36 *Ga.* 669; *A. & W. P. R. Co.* v. *Speer*, 32 *Ga.* 550 (79 Am. D. 305); *A. & W. P. R. Co.* v. *Hopson*, 33 *Ga.* 116; *Haisten* v. *S., G. & N. A. R. Co.*, 51 *Ga.* 199; *Ga. So. R.* v. *Reeves*, 64 *Ga.* 492; *Butler* v. *Tifton Ry. Co.*, 121 *Ga.* 817 (40 S. E. 763).

3. The demurrer also raised the objection that the petition was not paragraphed in the manner required by law. While we think that some of the paragraphs of the petition were capable of sub-

division, we can not say that there has been such a disregard of the provisions of the act that the judge erred in upholding the petition as framed. As was said in *Atlanta, K. & N. Ry. Co.* v. *Smith,* 119 *Ga.* 668 (46 S. E. 853), "It is impossible to satisfactorily define what would be an orderly paragraph, and this matter must be left largely to the discretion of the trial judge." See also *Atlantic Coast Line R. Co.* v. *Taylor,* 125 *Ga.* 454 (54 S. E. 622).

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*