## MILLEDGEVILLE WATER CO. et al. v. EDWARDS.

1. The superintendent of a waterworks company had apparent authority to make contracts generally on behalf of the company with its customers, though in reality his authority was limited by the rules and by-laws of the company to the making of contracts at the regular rates charged for water. These rates were generally known to the public, but the limitation on the authority of the superintendent was not. The plaintiff made a special contract with the company through the superintendent, knowing that the rate charged him was lower than that usually charged by the company, but not knowing, and not being chargeable with knowledge, of the superintendent's lack of authority in this respect. *Held*, that the contract, being within the apparent authority of the superintendent, which the company held him out to the world as possessing, was binding on the company.

2. A contract by the terms of which a waterworks company agrees to furnish water to a consumer at a greatly reduced rate, the consumer agreeing on his part to lay his own pipe and put in his own fixtures, at an expense of several hundred dollars, and to allow the company to tap his pipe for the purpose of supplying other customers with water, is not void for lack of mutuality, even though the consumer be under no obligation to take the water for any given length of time. Especially is such a contract binding on the company when it is executed on the part of the consumer.

Argued November 28,—Decided December 21, 1904. Rehearing denied January 26, 1905.

Equitable petition. Before Judge Lewis. Baldwin superior court. July 13, 1904.

*Hines & Vinson* and *Hall & Wimberly*, for plaintiff in error. Principal not bound by acts of agent in excess of his authority; proof of authority, etc.: Civil Code, § 5192; *Ga. R.* 29/399; 66/367; 75/243; 85/28, 482; 91/317; 92/269, 292; 97/435,

582; 104/772; 108/754; 50 Am. D. 70; 1 Am. & Eng. Enc. L. 986-7; 19 Am. D. 92; 1 Minor's Inst. 206; 36 Kan. 284; 3 West. R. 677; 5 Ib. 581; 106 Ind. 152; 62 Mich. 643; 28 U. S. (3 Pet.) 413, 7 L. ed. 724; 2 Mees. & W. 178; 4 Ib. 125; 5 Ib. 643; 7 Ib. 427; 8 Ib. 305; 1 Esp. 111; 2 Cromp. & M. 392; 1 Y. & J. 457; Amb. 495; 21 Pa. St. 507; 69 Ia. 189; 32 Barb. 411; 1 How. Pr. 301; Taylor, Corp. 197. Restraint of contract violation; specific performance: *Ga. R.* 5/341; 6/508; 36/190; 60/233; 70/198; 71/818; 73/570; 75/353; 101/810; 110/142, 420; 115/480.

*Allen & Pottle*, contra, cited Civil Code, §§ 1861, 3034; 116 *Ga.* 201.

CANDLER, J. Edwards conducted a dairy and truck farm about two miles from the center of the City of Milledgeville. The Milledgeville Water Company, a corporation, supplied water, for a consideration, to that city and its residents. Wilson, since deceased, was superintendent of the Milledgeville Water Company. Edwards' residence was more than a mile from the nearest main of the water company. Edwards claims, that in the year 1897 Wilson solicited him as a customer of the water company; that he realized the great advantage to him of an unlimited supply of water, especially in the operation of his dairy, but was not willing to subscribe to the regular rates charged by the company; and that finally, at the urgent solicitation of Wilson, he entered into an oral agreement with the water company, through Wilson as its agent, by the terms of which he was, at his own expense, to lay pipes from his residence to the nearest main of the company, make the necessary connections, and supply his own plugs, faucets, and other materials, while the water company agreed on its part to furnish him water during the term of its contract with the City of Milledgeville at a rental of $12.50 per annum. He alleges that he fulfilled his part of the contract by laying the pipes and making the connections as agreed, at an expense to him of several hundred dollars; that recently the water company has served notice upon him that it will no longer furnish him with water at the rate stipulated by his contract, but will exact of him a much higher rate, in default of the payment of which it will cut off his supply of water; and that to deprive him of his water supply would greatly injure his business, while the exaction of a higher

rate would be in violation of the contract into which it entered. He alleges that the water company is insolvent and unable to respond in damages; and he prays for an injunction against the water company and Whitaker, its present superintendent, to restrain them from disconnecting his pipes from their water main, and from interfering with his use of the water under the terms of the contract alleged. The water company denies that such a contract was made, or, if sought to be made, that Wilson had any authority to make it. It admits that for several years Edwards has been getting water from it for .$12.50 per annum, but claims that this was the regular rental for two faucets, and that when it ascertained, from an inspection of the premises, that Edwards was using more than that number of faucets, it immediately notified him that he must pay an additional amount therefor or suffer his supply to be cut off. It contends that Mrs. Edwards, and not Edwards, owned the premises where the water was supplied, and that the written consent of the owner did not accompany the application for water, as required by its rules; and this is set up in bar of the relief sought. It denies all the material allegations made by Edwards, and insists that an injunction should not be granted. It is now before this court as plaintiff in error in a bill of exceptions to the judgment of the superior court of Baldwin county, which, after a jury trial resulting in a verdict for the plaintiff, enjoined it as prayed. The motion for a new trial contains twenty-six grounds, many of which raise practically the same questions. We will take up two questions which, in our opinion, constitute the vital issues in the case, viz., whether or not, under the evidence, the jury were authorized to find that Wilson, the superintendent of the water company, had the power to make for it a contract of the nature of the one under consideration; and if, having that power, he made the contract claimed by the plaintiff, whether or not that contract was unilateral and unenforceable for lack of mutuality.

It was not denied that Wilson was a general agent of the defendant company. His duties, as stated by the secretary of that company, were " to collect the rents and make contracts as prescribed in books of rules and regulations, and to look after the operation of the plant." Many, if not most, of the contracts made by the defendant were in his name and by his authority. It was

contended, however, that his authority to contract in the name of the company was limitated to the rates, rules, and regulations prescribed by the company, and that he had no power to contract to furnish water at a lower rate than those laid down in the regulations by which he was bound. This contention was amply supported by evidence for the defendant. It does not appear, however, that this restriction of his authority was known to the plaintiff, or that he was in any way chargeable with notice of it, nor does it appear that the public were on notice as to who fixed the rates to be charged for water. The public were not warned that his powers were limited. On the contrary, the matter seems to have been locked in the corporate bosom, a secret known only to directors and general officers, most of whom resided in the distant State of Pennsylvania. Assuming that the contract was unauthorized, there can be no question as to ratification; for the evidence is all to the effect that as soon as it was discovered that Edwards was using a greater number of faucets than that for which he was being charged on the books of the company (a fact which was not shown to have been imparted by Wilson to the officers of the company, and which they appear to have discovered only upon an inspection of the plaintiff's premises after the death of Wilson), he was notified without delay that he must pay the regular rate in the future. Aside from the question of ratification, however, if Wilson was held out to the world as an agent with general powers to contract in the name of the defendant, and no notice was given of any restriction on those powers, and on the faith of his known relations to the company Edwards entered into a valid contract with the company through his agency, in the fulfillment of which he incurred an expense which he otherwise would not have incurred, the principal would be held to the contract regardless of the fact that the agent exceeded his authority. It is a well-settled principle of the law of agency that a principal is bound by the acts of his agent within the apparent authority which the principal himself knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. 1 Am. & Eng. Enc. L. (2d ed.) 989; *City Bank* v. *Kent*, 57 *Ga.* 283; *Blaisdell* v. *Bohr*, 77 *Ga.* 381. As we have already shown, Wilson was the general agent of the water company, held out to the public as one having

authority to sign contracts in its behalf.    On the other hand, the public were also on notice as to what the regular rates of the company were, and the plaintiff himself knew that he was making a contract for water at a lower rate than that granted the general public.    In other words, he made a special contract with a general agent.    By a special contract we do not mean to say that he knew that he was making a contract outside the authority of the agent, for if that were true the discussion would end right there; but he knew that the usual and regular rates were being varied for his benefit.    The decision of this branch of the case, then, turns upon the single question whether or not the knowledge of Edwards as to the regular and usual rates charged by the company, and that these rates were being varied for his benefit, was sufficient to put him on inquiry as to the authority of the agent to so vary them.    As Wilson was held out to the world as an agent having general powers to contract in behalf of the defendant company, and as he was admitted to have had general supervisory powers over the operation of the plant, we are constrained to answer this question in the negative.    The case of *Harris* v. *Central R. Co.*, 91 *Ga.* 317, is not, we think, in conflict with what we now hold.    In that case two subordinate agents of a railroad company, one a soliciting agent and the other a station agent, contracted with the plaintiff to relieve him from the operation of a general rule which was well known to the plaintiff.    The limited authority of the agents was obvious, and the plaintiff knew that the rule in question was promulgated by the general authorities of the company.    The facts of that case differentiate it easily from the case at bar.

2. On the question whether the alleged contract was void for want of mutuality we have no difficulty.    "A consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise."    Civil Code, § 3657.    According to the plaintiff's testimony, he was put to an expense of between $600 and $700 in laying pipe from his residence to the point of connection with the defendant's main, providing water fixtures, and otherwise carrying out his part of the agreement.    Certainly this was an injury that accrued to him.    Furthermore, he gave the defendant company the right to tap his line of pipe, thus affording it the opportunity to supply other customers in the vicinity of his residence.    With equal certainty, this was a benefit

accruing to the water company. There is a broad distinction to be observed between this case and the case of *Morrow* v. *Southern Express Co.*, 101 *Ga.* 810. There it did not appear that the plaintiff was put to any expense whatever in fulfilling his part of the agreement. Here, as we have seen, the case is altogether different. There the plaintiff could be held to nothing under his contract. Here the plaintiff is bound to keep down his pipes so long as the company is willing to furnish him with water at the agreed rate, even though he is not bound to continue taking the water. Indeed, it is extremely doubtful if this question can now be made by the water company; for when this case was here before on exceptions to the sustaining of a demurrer to the plaintiff's petition (*Edwards* v. *Milledgeville Water Co.*, 116 *Ga.* 201), it was held, that, "for the purpose of obtaining the injunction prayed for, the petition stated the terms, scope, and extent of the contract with sufficient fullness and certainty." The evidence for the plaintiff on the present hearing on all material matters substantiated the allegations of his petition. It having been decided, therefore, when the case was here before, that a valid contract was declared on, and that contract having since been proved substantially as alleged, no question can now be raised as to its lack of mutuality.

The grounds of the amendment to the motion for a new trial, twenty-six in number, consist in assignments of error upon the admission of evidence, the refusal of the court to charge as requested, and certain extracts from the charge as given. To treat of each of these grounds separately would consume unnecessary time and space, especially as the case has been disposed of on its substantial merits, upon uncontradicted evidence, by what has been said in the foregoing. The charge of the court as to the presumption of authority when the bare fact of agency is shown was undoubtedly erroneous; and if the case turned upon a disputed issue of fact involving this question, a new trial would necessarily result. But the error in this charge, and whatever error there may have been in other rulings complained of, did not affect the merits of the decision reached; for, as already shown, the essential facts upon which the verdict and judgment were based were undisputed.

*Judgment affirmed.   All the Justices concur.*