## SWAN OIL COMPANY v. LINDER.

Specific performance "will not be decreed of a voluntary agreement or merely gratuitous promise," except in a case where possession of land has been surrendered upon a meritorious consideration, and valuable improvements have been made thereon upon the faith of the promise. Civil Code, § 4039. It follows that a naked promise resting in parol will not be enforced against the promisor, notwithstanding he may have encouraged the person to whom he made the promise to expend money on the faith thereof, the expenditures made being for his own benefit and not for or in behalf of the promisor, who received no benefit therefrom. Under the facts alleged in the present case, the plaintiff was not entitled to the relief sought, and the action was properly dismissed on demurrer.

Submitted April 14, — Decided August 1, 1905.

Equitable petition. Before Judge Holden. Hart superior court. January 7, 1905.

The assignment of error made in the bill of exceptions is that the court on demurrer dismissed the plaintiff's action. The facts relied on by the plaintiff company and set forth in its petition were substantially as follows: It was incorporated, under the name of the Swan Oil Company, May 26, 1902, for the purpose of engaging in the business commonly carried on by the proprietors of oil-mills, the promoters of the enterprise being James Swan, A. J. Little, and others. Before applying for a charter, they authorized Little to buy up certain property in the town of Hartwell on which to locate the company's plant, and furnished him with the purchase-money, he agreeing to convey the property to the company when incorporated; he accordingly bought the property from W. T. Johnson and J. C. Massey, taking deeds thereto in his own name, but afterwards conveying the property to the company. Prior to making this purchase, Little went to T. J. Linder, who was operating the Hartwell railroad under a lease from the Hartwell Railway Company, and stated to him the object and purpose of the intended purchase of the property from Johnson and Massey, at the same time saying the purchase would not be made unless a practicable and convenient right of way could be obtained from him, as lessee of that company, from the main track of the railroad to the property of Johnson and Massey, running across certain streets and over two vacant lots belonging to the railway company. Linder promised Little that, as soon as the plaintiff company was incorporated, he

would deed to it the desired right of way. Thereupon Linder carried Little to a point on the railroad near where the main line crossed Jackson street, and pointed out the proposed right of way for a spur-track from that point to the property on which the promoters of the plaintiff company desired to build its oil-mill. The route thus agreed on is the only practicable way to enter the property purchased from the main line of the railway. In pursuance of this agreement on the part of Linder to lease this right of way, Little purchased the property from Johnson and Massey at a cost of $2,100. Under the contract of lease held by Linder from the Hartwell Railway Company, Linder had the right to lease to plaintiff the proposed right of way. After plaintiff was incorporated, Little, acting as its agent, presented to Linder a writing to be signed by him, leasing to the plaintiff the desired right of way, and at the same time also requested of Linder a grant of a building privilege on one of the vacant lots belonging to the railway company. Linder replied he would sign the lease for the right of way and would also grant the building privilege requested ; but proposed that plaintiff wait till he could confer with the officers of the railway company about granting the building privilege, saying that if it was agreeable to them he would grant both the right to build on the vacant lot and the proposed right of way. Plaintiff had previously, acting on the faith of Linder's agreement to give it a right of way, begun valuable improvements on the property purchased by it, and Linder on this occasion requested plaintiff to go on with these improvements, as he would sign the lease granting the right of way in any event. " The principal reason and consideration that induced said Linder to give petitioner a right of way over said land " of the railway company, and to allow petitioner to connect a spur-track from its oil-mill with the main line of that company, was that " petitioner should and would be obliged to patronize the said Hartwell railroad, running from Hartwell to Bowersville, which said Linder was operating under said lease from the Hartwell Railway Company, with all shipments of freights to and from said oil-mill, and that the building of said oil-mill in Hartwell on the proposed location as aforesaid, would greatly benefit said Linder and said Hartwell Railway Company by increasing the earnings of said Railway Company over and from its road." Without this right of way

and spur-track plaintiff can not build its oil-mill and operate its business on the site purchased, without such expense in hauling its products and raw material as to destroy all profits and to prevent carrying on the business save at a loss. Plaintiff has several times requested Linder to sign a lease covering the desired right of way, but he has refused so to do, notwithstanding he had that right under his lease from the railway company. At the suggestion of Linder that its main line might at an early day be changed to a standard-gauge road, plaintiff went ahead and purchased $101.76 worth of standard-gauge cross-ties with which to build the proposed spur-track, shipping these ties over the railroad under the control of Linder to the town of Hartwell, at which point they were by his direction unloaded at the place near Jackson street where he had agreed to allow the spur-track to be connected with the main line. Besides paying to Linder the freight on these cross-ties, plaintiff also paid him freight on a quantity of building material to be used in the erection of its oil-mill, also expending large sums in improving its building site, the aggregate amount expended being some $1,580.13 in addition to the $2,100 paid for the land purchased on the faith of Linder's agreement, which land will be practically worthless unless it can be reached by a spur-track. The plaintiff alleged that the refusal of Linder to comply with his agreement was "unfair, unjust, and injurious and damaging to petitioner, rendering petitioner unable to build and compete with other mills;" that he has, "by his fraudulent conduct, by his deceitful means and willful promises, led your petitioner into considerable expense in procuring" a charter, employing lawyers, etc., in the sum of $500, or other large amount; and the plaintiff prayed that Linder be required to execute to it a lease to the right of way described in its petition, or, if for any reason this relief could not be afforded, that plaintiff have judgment against Linder for the damages it had sustained by reason of his refusal to execute such lease.

The demurrer was based on both general and special grounds, one of these grounds being that the parol agreement to lease was within the statute of frauds, and another being that the facts alleged were not such as to entitle the plaintiff to equitable relief of the nature sought.

*J. H. Skelton* and *J. N. Worley*, for plaintiff.
*W. L. Hodges* and *A. G. & Julian McCurry*, for defendant.

EVANS, J. (After stating the facts.) It is now well settled in this State that specific performance of a parol contract as to land will be decreed, "if it be so far executed by the party seeking relief, and at the instance or by the inducements of the other party, that if the contract be abandoned he can not be restored to his former position." Civil Code, § 4037. Relief will likewise be afforded where "there has been such part performance of the contract as would render it a fraud of the party refusing to comply, if the court did not compel a performance." Civil Code, § 2694 (3). But it does not follow that a promise made without consideration is enforceable in a court of equity merely because the person to whom it is made has, relying upon its fulfilment, acted to his prejudice. Where there is a contract which would be binding on both parties if it did not rest wholly in parol, the interposition of a court of equity, after the contract has been partly performed on one side, is justified, to prevent positive fraud being perpetrated by the party who then repudiates the contract and refuses to himself perform. And we have cases in which a gift has been enforced, where the donee has actually entered on land in reliance on a parol promise to deed it to him and has, at the donor's instance, made valuable improvements thereon; for in such a case the donor would profit by his fraudulent conduct to the extent of the value of the improvements made, were he permitted to break his promise. *Porter* v. *Allen*, 54 *Ga.* 624; *Jones* v. *Clark*, 59 *Ga.* 136; *Hughes* v. *Hughes*, 72 *Ga.* 173; *Howell* v. *Ellsberry*, 79 *Ga.* 475. What was the character of the alleged agreement by Linder in the present case? According to the most favorable view of the plaintiff's allegations, it was a promise to give the plaintiff a valuable right of way; there is no pretense that there was any consideration for this promise; what induced Linder to make it were such incidental benefits as he believed might flow to him by the plaintiff being placed in a position where its interests would dictate that it should make shipments over the road which he controlled. It is to be observed that the plaintiff was not bound to apply for a charter, or to erect an oil-mill, or, in the event it should be incorporated and should elect to build its

plant and lay a spur-track to the main line, to ship any freight, save at·its option, over the line of railway which Linder had leased and was operating. Imagine the absurdity of his predicating a suit for damages upon the failure of the plaintiff to erect its plant and to furnish shipments to his road, had the plaintiff, after it was incorporated, abandoned its project, or, after erecting its mill, elected not to build a spur-track or to furnish any shipments of freight to him. The so-called "agreement" between the parties was entirely unilateral. *Morrow* v. *Southern Express Co.*, 101 *Ga.* 810; *Huggins* v. *Cement Co.*, 121 *Ga.* 311; *Swindell* v. *National Bank*, 121 *Ga.* 714. Were Linder compelled to perform his promise by executing to the plaintiff a lease to the coveted right of way, how would the parties then stand? At its option the plaintiff company could go on and build its plant or abandon the enterprise; and after it erected the mill, the company would be under no obligation to furnish shipments to Linder or have shipments to it made over his line, inasmuch as the company has never undertaken to bind itself to pay or to do anything whatever in consideration of his executing a lease to a right of way for its spur-track. The courts can not, of course, make a contract for the parties; and the question is, can the agreement of Linder be enforced against him because he has encouraged the plaintiff to expend money upon the faith of his complying with his naked promise to make to it a valuable gift necessary to the complete enjoyment of its property. He has not profited by the expenditure of any of this money; he will not profit therefrom or from the carrying out of the plaintiff's commercial enterprise, save at its pleasure and in a measure it shall determine for itself; he can not force it to perform. *Harrison* v. *Lumber Co.*, 119 *Ga.* 6. The case is not one like that of *McCaw Manufacturing Co.* v. *Felder*, 115 *Ga.* 408, where one party makes a continuous proposal to do something for another, or to sell or furnish him something, if he, in return, will do or bind himself to do something for the former. In such a case, if the proposal be accepted before it has been withdrawn, mutuality is not lacking, and both parties become bound to perform their respective obligations. If the one who makes the proposal does not withdraw it before the other, with his express or implied assent and appro-

bation, enters upon a performance of the obligations which it was proposed he should undertake, and expends money in so doing, the want of mutuality in the first instance because he did not bind himself to perform will not excuse the other from living up to the terms of his proposal. *Fontaine* v. *Baxley,* 90 *Ga.* 416.

Our code, however, expressly declares that specific performance " will not be decreed of a voluntary agreement or merely gratuitous promise " in any case except one, viz., where possession of lands has been given under such an agreement, upon a meritorious consideration, and valuable improvements have been made upon the faith thereof. Civil Code, § 4039. Nor has the letter of this section been broadened by construction to meet cases which might well have been included in the exception. *Thompson* v. *Ray,* 92 *Ga.* 285, where during the life of the donor materials with which improvements were made after his death were purchased with his knowledge. In *Peacock* v. *Deweese,* 73 *Ga.* 570, the court declined to give its aid to the plaintiff, because the agreement he relied on was unilateral, he not having bound himself to do anything, save at his option, for the benefit of the defendant. To break a promise wholly without consideration does not constitute legal fraud, and the mere fact that the person to whom the promise is made is thereby induced to act as he would not otherwise have done will not of itself alone afford ground for equitable interference or redress. Where the aggrieved party's complaint is that he expected to get something for nothing, and, so expecting, expended money for his own benefit, not that of the promisor, which he otherwise would not have done, his loss of expectations and money is to be attributed to his own folly rather than to fraud on the part of the promisor, who never legally bound himself to perform, as his disappointed promisee was bound to know. Especially where, as in the present case, the alleged promise was not only gratuitous but was in parol, the statute of frauds should not be emasculated. Our Civil Code, § 4039, does not take such a case out of the statute, but declares that the promise, being wholly without consideration, can not be specifically enforced, without qualifying this declaration in any way, or providing that money expended by the promisee on the faith of the promise will render it obligatory upon the promisor. The

plaintiff has done nothing, nor does it propose to do anything, in pursuance of any *contract* with the defendant. The case stated is even less meritorious than that of *Simonton* v. *Ins. Co.*, 51 *Ga.* 76, wherein this court declined to enforce a parol contract of insurance relied on by the plaintiff. A policy was issued by the company, covering a stock of goods of the plaintiff while contained in a certain house, from which he subsequently commenced to remove the goods to another house, and while so engaged was asked by the company's agent if he desired his policy transferred; plaintiff replied, by all means, if necessary, and the agent consented to the removal and promised to make the necessary entry on the books; thereupon the plaintiff continued the removal, took out no new insurance, and his goods were subsequently destroyed by fire. This court held that "this was not such action on the alleged parol agreement as estopped the insurance company from insisting that the contract was not in writing." In the case of *Milledgeville Water Co.* v. *Edwards*, 121 *Ga.* 555, the defendant company set up the defense that the contract was lacking in mutuality; but, as was pointed out by Mr. Justice Candler, this point was not well taken, for the promise of the company was based on a valuable consideration, and the company had, after the plaintiff had gone to large expense in complying with his obligations, for some time supplied him with water under that contract. The real objection to it was that it was indefinite as to the time of its continuance; but after it had been so far carried into effect, the plaintiff had a right to enjoin the company from cutting off his water supply until such time as the benefits flowing to him from a continuance of the arrangement entered into would in value approximate the outlay he had incurred in putting down the supply pipe he had obligated himself to lay for their joint use and benefit. The present case is quite dissimilar. If the plaintiff had been permitted to lay the proposed spur-track and had completed its plant, then or thereafter obligating itself to make all shipments of freight it might have in the conduct of its business over the defendant's railroad, doubtless a court exercising equity jurisdiction would well be justified in enjoining the defendant from interfering with the plaintiff's use of the spur-track until it had reaped the contemplated benefits from its outlay in building the same; but such is not this case. The *Edwards* case,

just cited, is in accord with the line of cases holding that even a, parol license, without consideration, is not revocable at the will of the licensor after the licensee has been permitted by him to expend money on the faith thereof, although no definite period was fixed for the duration of the license. The present case is unlike any with which we have heretofore been called on to deal; and we are of the opinion that the court below would have been unwarranted in so stretching its equitable powers as to grant the; relief sought.

*Judgment affirmed. All the Justices concur, except Simmons,. C. J., absent.*