MOSEL et al. v. SAN ANTONIO & A. P. RY. CO. (No. 5542.)

(Court of Civil Appeals of Texas. San Antonio. May 26, 1915. Rehearing Denied June 25, 1915.)

1. RAILROADS ☞58—MAINTENANCE OF DEPOTS—CONTRACTS—VALIDITY.
A railway company may, by contract, bind itself to perpetually maintain a depot at a particular place, unless the interests of the public demand a removal of the depot.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. ☞58.]

2. RAILROADS ☞60 — DEPOTS — CONTRACTS —ENFORCEMENT.
The court may enjoin a railway company from moving its depot located under a contract,

provided public interests do not demand a removal of the depot.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 134, 136; Dec. Dig. ☞60.]

3. RAILROADS ☞58—ACQUISITION OF LAND FOR DEPOT PURPOSES — CONTRACTS — PERFORMANCE.
A railway company acquiring land for a money consideration, and for the further consideration of maintaining thereon perpetually a depot, does not perform the contract to maintain the depot by maintaining it for eight years, and the contract is enforceable unless public interests demand a removal of the depot.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. ☞58.]

4. RAILROADS ☞58—LOCATION OF DEPOTS—CONTRACTS.
A railway company, contracting to maintain passenger and freight depots on land acquired for the purpose in a small town, does not comply with the contract by maintenance of a freight depot only, in view of the custom that in small towns freight and passenger depots are located on the same grounds near each other.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. ☞58.]

5. RAILROADS ☞58—LOCATION OF DEPOTS—POWERS OF RAILROAD COMMISSION.
The Railroad Commission, empowered by Vernon's Sayles' Ann. Civ. St. 1914, art. 6675, to see that laws relating to railroads are enforced, has no authority to enforce a contract by a railway company with a private person to maintain a depot at a particular place, notwithstanding article 6550, providing for the designation of depot grounds, and prohibiting a change therein, which prevents the practice of locating a depot and after citizens have invested in lands adjacent thereto, removing the same, but which does not prevent a company from moving a depot to a more desirable location in the same town.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 130, 131, 133, 135, 136; Dec. Dig. ☞58.]

6. RAILROADS ☞60—DEPOTS—CONTRACTS FOR LOCATION—ENFORCEMENT—PETITION.
A suit to restrain a railway company from moving its passenger depot in a town to another place in the same town, which alleges that the company contracted to maintain a depot at the present location; that it began preparations to erect a new depot on other grounds; that the place for the new depot would be inconvenient and inaccessible; that plaintiffs bought their property on the faith that the company would maintain its passenger depot on the present site —states a cause of action as against a general demurrer, and the court on the evidence must ascertain whether plaintiffs are entitled to a temporary injunction until the case may be tried on the merits.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 134, 136; Dec. Dig. ☞60.]

7. INJUNCTION ☞157—TEMPORARY INJUNCTION — APPLICATION — QUESTIONS DETERMINED.
A suit for an injunction should not be determined on a hearing for a temporary injunction, but the court sitting in chambers should, after hearing the evidence, grant or refuse a temporary injunction.
[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 340, 342; Dec. Dig. ☞157.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

8. INJUNCTION ☞152 — APPLICATION FOR TEMPORARY INJUNCTION — EXCEPTIONS TO PETITION.

The trial judge, on hearing in chambers an application for a temporary injunction, cannot pass on defendant's exceptions to the petition.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 337, 343; Dec. Dig. ☞152.]

Appeal from District Court, Kerr County; R. H. Burney, Judge.

Suit by H. Mosel and others against the San Antonio & Aransas Pass Railway Company. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

H. C. Geddie and J. R. Burnett, both of Kerrville, for appellants. Boyle & Storey, of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by Herman Mosel, the West Texas Supply Company, and Henry Welge, appellants, to restrain appellee and H. Remschel and Charles Schreiner from moving its passenger depot from its present location in the town of Kerrville to another place in the same town about two blocks distant. It was alleged that, in 1892, Charles Schreiner conveyed to appellee 17⁴/₁₀ acres of land to be used for depot purposes; that freight and passenger depots were established on the grounds; that the houses burned about two years ago, but a new freight depot was erected and a temporary passenger depot built on the 17⁴/₁₀ acres aforesaid; that the consideration for the conveyance of the land was $3,000 and "the further consideration of the maintenance by said railway company of a depot on the tract of land hereinafter described," referring to 17⁴/₁₀ acres of land, "and meaning a passenger depot"; that appellee had begun preparations to abandon the present site of the passenger depot and erect a new depot off the grounds conveyed to it for depot purposes, that the place chosen for the new passenger depot would be "inconvenient, inaccessible, and not reasonably safe to passengers." It was further alleged that Mosel owned seven lots, two of which front the depot grounds, all of them being in that vicinity, and the removal of the depot would greatly injure his business and depreciate the value of his property, and also the property and business of the West Texas Supply Company, which owned lots near the depot, and was doing business there; that Mosel and the supply company bought their property upon the faith of the covenant that appellee would maintain its passenger depot on the land. This is a sufficient statement of the allegations of the petition which, together with the exhibits, covers 23 pages of the transcript. Appellee filed a general demurrer, and 13 special exceptions to the petition, and answered, traversing many of the allegations of the petition, and alleged that all of the property owned by appellants was bought from Schreiner before he conveyed the depot grounds to appellee except two lots and block 10, owned by the supply company, that block 10 is situated nearer the proposed location of the depot than to the old one, and that the two lots mentioned are vacant lots without any improvements on them. The court sustained the general demurrer on the ground that the contract is one that cannot be specifically enforced.

[1] Appellants sought a temporary injunction and specific performance of the contract evidenced by the deed of conveyance made by Charles Schreiner to appellee. It has been held that such a covenant, as that to maintain a depot at a certain locality, is one that runs with the title, and if that be true and Charles Schreiner could have enforced the contract, then his vendees could also have the equitable remedy of specific performance of the contract. The contract with Schreiner was a valid and binding one, as it has been time and again held in Texas that a railroad corporation can, by contract, bind itself to perpetually maintain a depot at a particular place. Railway v. Robards, 60 Tex. 545, 48 Am. Rep. 268; Railway v. Dawson, 62 Tex. 260; Railway v. Molloy, 64 Tex. 607; Williams v. Railway, 82 Tex. 553, 18 S. W. 206. All the cases cited, however, were those involving suits for damages, and the question of specific performance is not mentioned therein. That suits for damages on such contracts can be maintained is held in a number of states. Railway v. Camp, 130 Ga. 1, 60 S. E. 177, 15 L. R. A. (N. S.) 594, 124 Am. St. Rep. 151, 14 Ann. Cas. 439, and notes. In other courts it has been held that an agreement to establish a depot at a particular point in consideration of a transfer of land is illegal and void.

The well-considered case of Railway v. Camp, herein cited, has been sustained by the weight of authority, in so far as it holds that such contracts as the one under consideration are valid so long as it is possible for the company to discharge the duties owed by it to the public, and, at the same time, discharge the duties incumbent upon it by the contract. In the Georgia Case, after reviewing the authorities on the subject, the court held:

"The effect of * * * the decisions just referred to is that, when one contracts with a railroad company in reference to those matters where the public is involved, the contract is made subject to the rights of the public; and when the exigencies of the business of the company are such that the rights of the public come in conflict with the rights of the contracting party under his contract, it is to be presumed that it was the intention of the parties that the private rights under the contract should yield to the public right. In applying what has been said to the present case, it cannot be held that the contract * * * was void per se; for the company had the right to make a contract with the plaintiff to locate a station at a given point, so long as the location of the station did not interfere with the proper discharge of the duties resting upon the company as a quasi public corporation. But the plaintiff was charged with notice of the character of the person he was

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

contracting with, and of the duties which that person owed to the public, and also, in reference to the subject-matter of the contract, that it was connected intimately and directly with the discharge of the duties the defendant owed the public; and therefore it became a part of the contract between the parties that the maintenance of the station at the point was limited, not by the time specified in the contract, but to that time, and to that time only, when, consistently with the discharge of the public duties of the company, the station could be maintained in the manner provided for in the agreement. The petition therefore set forth a cause of action. There is nothing alleged to indicate that the conditions are so changed that the railroad company cannot comply with its contract and at the same time discharge all duties to the public which the law places upon it. If that time has arrived, the railroad company may be allowed to show this by an appropriate plea, supported by competent evidence. This is a matter of defense."

In the Georgia Case a demurrer was sustained to a suit for damages on a breach of contract to maintain a depot at a certain place.

There are cases that hold that such contracts are void, as against public policy, and cannot be specifically enforced, and that a party thereto is relegated to his suit for damages, but we are unable to see how a contract that cannot be specifically enforced because it is void on the ground that it is opposed to public policy can be made the basis for damages or any other character of suit. If it is void because in the face of public policy, it is void, and no suit of any character could be based upon it. The contract is valid or it is invalid, and if the former, it is like any other valid contract and can be specifically enforced. If invalid, the contract will not sustain an action for anything.

In the case of Conger v. Railway, 120 N. Y. 29, 23 N. E. 983, an action had been brought to compel specific performance of a contract to maintain a station at a certain point, and the cause was decided against specific performance, not on the ground that the contract was void, but on the ground that the facts showed that maintaining the station at the point contracted for would not inure to the good of the public, and it was also consistently held that the fact that the station was not in a place where it would be of benefit to the public should not prevent a recovery for damages for breach of the contract. In other words, while it was conceded that the public good would be advanced by the removal of the station to another point, still that fact did not destroy private rights arising from a breach of the contract. As said by the New York Court of Appeals:

"It has become the well-settled doctrine of this court that the specific performance of a contract is discretionary with the court, and that performance will not be decreed where it will result in great hardship and injustice to one party, without any considerable gain or utility on the other, or in cases where the public interest would be prejudiced thereby."

In Elliott on Railroads, § 362, the rule is formulated as to stations located by contract as follows:

"If the contract is made solely to promote private interests at the expense of the public welfare, it should, as we think, be held to be illegal. But if public interests are not prejudiced, or the power of the company to do what the public welfare demands is not abridged, we believe the contract should be regarded as valid."

The enforceability of such contracts must depend upon the facts of the particular case, and the contract be held valid and binding whenever the public welfare is not jeopardized thereby. Elliott, Railroads, § 386. There can be no question of public policy involved in the enforcement of such a contract, because in its enforcement the public interests can and will be carefully guarded. Many are the sins that have been committed in the name of public policy, which is so broad and indefinite that it can be and is invoked at the expense of reason and justice. No right to locate a depot, where the public interests demand it should be located, is bargained away, but the contract merely binds the railway corporation to abide by its contracts until its higher duty to the public releases it from the same. The moment the private interests of the party contracting with the corporation comes in conflict with the higher and more sacred duty to the public, the contract is automatically canceled and destroyed.

[2] Some courts hold that, as equity will not take up matters that involve the performance of continuous acts or duties, it will not enforce the maintenance of a depot at a point where the corporation has contracted to maintain it. That rule has no reasonable application to such a case. To enjoin a railroad company from moving its depot, located under a contract, is in no way different from restraining any other unlawful act. If, as stated in the case of Railway v. Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 385, the circumstances may change so that a removal should be permitted, another suit would remedy that matter without any continuous performance of equitable duties on the part of a court. It would not be a continuous performance because in the future the facts surrounding further performance of the contract have changed the position of the parties towards one another.

[3] We cannot accede to that other remarkable announcement, in the case cited, that performance of its contract for eight years by a railroad company as to the permanent location of its depot satisfies the contract, and the corporation can disregard it and move its depot to any point desired. The application of such a theory would place too much arbitrary power in corporations, and can have no solid basis upon which it can stand. Such a contract is in no wise different from any ordinary contract, except that it may be set aside in the interest of the pub-

lic. It is not void, but merely voidable, when it becomes antagonistic to the public good.

In the case of Taylor v. Railway, 54 Fla. 635, 45 South. 574, 16 L. R. A. (N. S.) 307, 127 Am. St. Rep. 155, 14 Ann. Cas. 472, the plaintiffs sought specific performance of a certain contract in which the railway company agreed, in consideration of a conveyance of land, to locate a portion of its main line, a spur track, depot, and platform, at a certain point, and the Florida Supreme Court, in a strong opinion, upheld the right of plaintiffs to enforce the contract. The court held:

"It is the duty of a common carrier railroad corporation to have regard for the rights of the public in the service it engages to perform under the franchises the state permits it to use primarily for the benefit of the public. This requirement embraces the duty to render a service adequate to meet all the just requirements of the public, including reasonable dispatch, convenience, regularity, and promptness in the transportation of passengers, provision and maintenance of adequate depot facilities suited to the business and convenience of the communities along the road, and the performance of the duties and the rendering of the service due to the public, without unjust discriminations of any character as to persons, localities, or conditions. This duty, however, does not relieve the corporation from its contract obligations to individuals when an observance of the obligations does not materially and injuriously affect the rights of the public, and where the public, or any member of it, is so affected, the rights of the respective parties cannot be arbitrarily determined by the corporation for itself. If the private rights under the contract cannot be adjusted by agreement, resort should be had to the courts by proper parties, where all rights will be adjudged. It is the duty of the corporation to observe the obligation of its contracts with individuals that are made in good faith, and that do not necessarily, directly, and materially affect injuriously substantial rights of the public, until the corporation is relieved from such contracts by due course of law. The railroad company is allowed a reasonable discretion in the performance of its duties and in the rendering of service to the public; but such discretion should be exercised in good faith and for the public welfare, and not arbitrarily, and it is subject to control and regulation by governmental authority."

That is the reasonable rule applicable to such contracts, and no railway corporation should be relieved from such contracts in the absence of proof that the interests of the public demand a removal of the depot from the point fixed by contract. The great weight of authority, as well as sound reason and common sense, support that proposition.

Texas authorities are not silent on the subject of the enforceability of such contracts, for in City of Tyler v. Railway, 99 Tex. 491, 91 S. W. 1, 13 Ann. Cas. 911, the court was construing a similar contract and held:

"There is no difficulty in enforcing the specific performance of this contract; the judgment of this court perpetuating the writ of injunction heretofore issued in this cause will have the effect to prevent the removal by the St. Louis Southwestern Railway Company * * * of its general offices and its machine shops and roundhouses for its main line from the city of Tyler, and we apprehend that no compulsory process of the court will be required to secure the maintenance and operation of the general office, machine shops, and roundhouses as thus located; nor will there be necessity for the oversight and supervision of any judicial or executive officer of the state in the operation thereof."

In that case the plaintiffs sought specific performance of a contract, which differentiated it from the case of Railway v. Colburn, 90 Tex. 230, 38 S. W. 153, in which an individual sought to recover damages for the removal of a depot from one town to another in violation of article 6550, Vernon-Sayles' Stats., and the court held that there was no cause of action.

[4] If, as alleged by the petition, it was contemplated by the parties to the deed of conveyance to the depot grounds that both passenger and freight depots should be maintained on the grounds, the maintenance of a freight depot thereon would not be a compliance with the terms of the contract. It is a well-known fact that in small towns the freight and passenger depots are located on the same grounds near each other, and that custom would be taken into consideration in arriving at a proper construction of the contract. The contract was so construed by appellee when it built freight and passenger depots on the grounds in question.

[5] It may be, as contended by appellee, that the Railroad Commission is the authority to enforce the law as to removal of depots, but it is not its duty to enforce the contracts of railroad companies with private parties. That is a right held by the party complaining of a breach of the contract through the courts. Appellant seeks to enforce a contract, and not a law. City of Tyler v. Railway, herein cited.

The Railroad Commission of Texas is authorized and empowered to see that all laws relating to railroads are enforced and obeyed and violations thereof promptly prosecuted (Vernon's Sayles' Ann. Civ. St. art. 6675), but it has no authority over contracts in regard to the location of depots. The Commission would be empowered to enforce article 6550, which provides for the designation of depot grounds and prohibits a change in such grounds after the same have been designated, but that power would not militate against appellants' right to enforce specific performance of the contract. If by the terms of that law it is meant that the route nor depots shall be changed after being actually surveyed and designated, the law could be used for removing any doubt, if there was one, of the specific performance of the contract being contrary to public policy, but we are of opinion that the law in question, while general in its terms, did not have in view the removal of a depot from one part of a town to another part of it, but was intended to prevent the practice of locating the route or depot at one point and after citizens had invested in lands adjacent or in proximity thereto to remove the line or

depot to another point. The law prohibits the change of route after actual survey, but it could not, in reason, be held that if a better route could be obtained by changing the survey so as to locate the line in another place in the same locality, the law would be violated. Such a construction would prevent the shortening of a railroad by several miles by cutting through a hill instead of going around it. So in regard to a depot it might be greatly to the detriment of the people of a town to have the depot in the location first selected and greatly to their benefit to have it in another location, and we do not think the law in question should be so construed as to prevent the railroad company from moving to the more desirable location in the town.

[6] The petition was not subject to general demurrer, but evidence should have been permitted to ascertain whether the preservation of the rights of appellants entitled them to a temporary writ of injunction until the case could be tried on its merits.

[7, 8] Appellants' case should not have been determined on a hearing for a temporary injunction, but the court sitting in chambers should, after hearing the evidence, have granted or refused the writ. The judge should not have acted on exceptions while sitting in chambers. El Campo Light Co. v. Water Co., 132 S. W. 868; Lane v. Jones, 167 S. W. 177. As said by Joyce in his work on Injunctions, § 109:

"In granting or refusing temporary relief by preliminary injunction, courts of equity should in no manner anticipate the ultimate determination of the question of right involved."

The effect of the order on the application for temporary injunction was to put appellants out of court.

The judgment is reversed, and the cause remanded.