SAN ANTONIO & A. P. RY. CO. v. MOSEL et al. (No. 5841.)

(Court of Civil Appeals of Texas. San Antonio. May 3, 1917. Rehearing Denied June 6, 1917.)

1. RAILROADS ⊙⇒72(8)—LOCATION OF DEPOTS —ENFORCEMENT OF CONTRACTS.

Until the public interest requires the removal of a depot, the railway company may be restrained from removing it in violation of a covenant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 177.]

2. RAILROADS ⊙⇒72(3)—LOCATION OF DEPOTS —ENFORCEMENT OF CONTRACTS.

When the public interest requires the removal of a railway depot, it can be removed notwithstanding a covenant with private individuals not to remove it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 171.]

3. APPEAL AND ERROR ⊙⇒1010(1)—FINDINGS —CONCLUSIVENESS.

A finding that a covenant by a railroad company in consideration of a conveyance of land to it to maintain a depot thereon meant a passenger depot will not be disturbed where it appears that there was a passenger depot on the tract conveyed at the time of the conveyance, and when the persons claiming the benefit of the covenant purchased their lots of the covenantee, that their property was used for mercantile, retail and wholesale establishments and residences, all of which were benefited by passengers brought into the vicinity while it was not shown that freight handled would benefit the contiguous property.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3981, 4024.]

4. RAILROADS ⊙⇒72(5)—LOCATION OF DEPOT— ESTOPPEL—ACCEPTANCE OF DEED.

Where a railway company accepted and registered a deed conveying the land on which a depot was erected, and containing a covenant on its part to maintain its depot on such land, thereby inducing purchasers to buy contiguous lands of its grantor upon the faith of the recitals in the deed, it was estopped to deny that it was bound by the covenant, even though it had in fact previously obtained the full title through another instrument.

·[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 174.]

5. RAILROADS ⊙⇒72(3)—LOCATION OF DEPOTS —COVENANTS.

A grantor of land could burden it with a covenant requiring the maintenance of a railroad depot thereon for the benefit of any land in the vicinity, whether owned by him or not.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 171.]

6. RAILROADS ⊙⇒72(5)—LOCATION OF DEPOTS —COVENANTS.

Even though a covenant in a deed requiring the maintenance of a railway depot on the land conveyed was not for the benefit of land previously conveyed by the grantor to other parties, a judgment restraining the removal of the depot could not be reversed where one of the plaintiffs seeking to restrain its removal purchased land that was owned by the common grantor at the time of the covenant, and was therefore entitled to the benefit of the covenant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 174.]

7. APPEAL AND ERROR ⊙⇒1001(1) — CONCLUSIVENESS OF VERDICT—RESTRAINING REMOVAL OF DEPOTS.

In a suit to restrain the removal of a railway depot in violation of a covenant in the deed under which the railway company obtained title to the land on which the depot was erected, a jury finding that the removal was not more to the interests of the citizens of the town would not be disturbed where, though the evidence showed that the biggest portion of the town was nearer the site of the proposed new depot, it was not clear that the removal was beneficial, and there was evidence of inconveniences from the proposed new site, and no evidence that the present site was inconvenient or objectionable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3928–3933.]

8. APPEAL AND ERROR ⊙⇒1170(10)—REVERSAL —TECHNICAL ERRORS.

Where the covenant relied upon required a depot to be maintained upon a tract of 17 acres, and the act sought to be restrained was the removal of the depot from such tract to another block several hundred feet away, the submission of an issue as to whether the new depot as located would be more beneficial than a depot located at the most advantageous part of the old depot property did not amount to such a denial of the rights of the railway company as was reasonably calculated to cause the rendition of an improper judgment within rule 62a for Courts of Civil Appeals (149 S. W. x), prohibiting reversals except for errors amounting to such a denial of appellant's rights.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4066, 4544.]

9. RAILROADS ⊙⇒72(8)—LOCATION OF DEPOTS —POWERS OF RAILROAD COMMISSION.

While the Railroad Commission has authority to enforce the law as to the removal of railway depots, it is not its duty to enforce con-

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tracts of railroad companies with private individuals as to the maintenance of depots.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 177.]

10. RAILROADS ⬡⇒72(8)—ENJOINING REMOVAL OF DEPOT—CONCLUSIVENESS.

A judgment restraining a railway company from removing a depot from a tract of land in violation of a covenant in the deed under which it obtained title to such land will not prevent the removal of such depot in obedience to an order of the Railroad Commission when the public benefit requires such removal and the Railroad Commission orders it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 177.]

Appeal from District Court, Kerr County; R. H. Burney, Judge.

Suit by Herman Mosel and others against the San Antonio & Aransas Pass Railway Company. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

See, also, 180 S. W. 1138.

Lee Wallace, of Kerrville, and Boyle & Storey, of San Antonio, for appellant. J. R. Burnett and H. C. Geddie, both of Kerrville, for appellees.

SWEARINGEN, J. This is a suit instituted by Herman Mosel, Henry Welge, and the West Texas Supply Company, appellees, to permanently restrain the San Antonio & Aransas Pass Railway Company, H. Remschel, and Charles Schreiner from moving the passenger depot of the railway company from its present location in the town of Kerrville, Tex., to another place in Kerrville about 600 yards distant.

The cause was tried with a jury, which found in answer to a single special instruction that the removal of the passenger depot to the new location was not more to the interest of the majority of the citizens of Kerrville than to maintain it on the 17.4-acre tract on which it was at the time this suit was instituted. Judgment was rendered by the court dismissing from the suit H. Remschel and Charles Schreiner and against appellant railway company for costs and permanently restraining the railway company from moving its passenger depot at Kerrville from off its depot grounds described as the 17.4 acres of land acquired by deed from Charles Schreiner, dated 1892.

The cause of action alleged against the railway company is that it made a restrictive covenant by the terms of which it bound itself in consideration of the legal title to the 17.4-acre tract to maintain its Kerrville passenger depot on that tract; that this covenant was expressed in the deed conveying the title from Charles Schreiner to the company, which deed was executed in 1892 and duly registered in the county containing the land; that at the time this covenant was made Charles Schreiner owned some of the land contiguous to the depot, but now owned by appellees; that Charles Schreiner had indicated by a recorded plat a subdivision of acreage into lots, blocks, streets, and alleys, and subsequently subdivided a second tract into lots, blocks, and streets and alleys; that the covenant to maintain the depot on the 17.4-acre tract placed a restriction upon the 17.4-acre tract for the benefit of all the land embraced in the two subdivisions of acreage tracts, and that the servitude upon the 17.4-acre tract for the benefit of the lots embraced in the two subdivisions ran with the lands and inured to the benefit of the subsequent purchasers of the lots in said subdivisions; that appellees purchased some of the lots in the subdivisions mentioned with notice of and in reliance upon the covenant expressed in the deed, and were at the time of the trial of this cause the owners of said lots. It was further alleged that appellant was about to breach the covenant and remove the depot, which would entail a great loss to the appellees; that the public good did not require the removal of the said depot.

Appellant, in defense, by general demurrer, contended that appellees could not invoke specific performance; denied the covenant; pleaded that appellees had no privity of contract or of estate; that such a covenant, which was denied, was void because contrary to public policy because made by a quasi public corporation; that only the railway commission of Texas had jurisdiction of questions of removing railway depots. Appellant further pleaded that possession and title to the 17.4 acres were vested in appellant about 1887 by law and gift, and that there was no consideration for the servitude expressed in the deed of 1892, and that some of the lots owned by appellees were purchased long prior to the covenant expressed in the deed, and denied that the covenant was for the benefit of the lots purchased by appellees after the making of the said covenant.

The evidence is that Charles Schreiner did own all the property contiguous to the railway depot at Kerrville, now owned by appellees, and did make and record a plat by which the land was divided into two subdivisions with reference to a passenger depot on the 17.4-acre tract; that the covenant to maintain a depot on the said tract was expressed in the deed from Charles Schreiner and was recorded by the railway company; that the appellees bought some of the lots now owned by them upon the faith of the covenant that the depot would be maintained on the 17.4-acre tract. And there is also evidence to sustain the conclusion that the public benefit did not require the removal of the passenger depot from the 17.4-acre tract.

Appellant's proposition germane to the first assignment complaining of overruling the general demurrer, is:

---

⬡⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Where a tribunal is created by law, with jurisdiction and authority to require railroads to provide and maintain depots and other facilities to adequately serve the public, and to enlarge or change the same when the public interests require it, a railroad company cannot be perpetually enjoined from removing its passenger depot from a particular location in a city or town, nor will a contract be specifically enforced to require the maintenance of a passenger depot at a particular location in a city or town, since such a decree would deprive such tribunal of the powers and authority to require railway companies to provide depot facilities at such places and in such manner as will from time to time, best serve the public interest."

[1] Until it appears from the evidence that the public interest requires the removal of the depot and consequent breach of the covenant not to remove, the parties to this suit have the right through the courts to restrain the railway company from removing the depot in violation of its covenant. Mosel v. S. A. & A. P. Ry. Co., 177 S. W. 1048; 7 R. C. L. pp. 1114–1120, §§ 30 to 35; Sprague v. Kimball, 213 Mass. 380, 100 N. E. 622, 45 L. R. A. (N. S.) 962, and note, Ann. Cas. 1914A, 431; Korn v. Campbell, 192 N. Y. 499, 85 N. E. 687, 37 L. R. A. (N. S.) 1, and note pages 12–37, 127 Am. St. Rep. 925; Godley v. Weisman, 133 Minn. 1, 157 N. W. 711, 158 N. W. 333, L. R. A. 1917A, 333; Doerr v. Cobb, 146 Mo. App. 342, 123 S. W. 547.

[2] It may be added, though not relevant to a ruling on demurrer, that there is sufficient evidence to sustain the jury's verdict that the public interest did not require the removal of the depot in this instance. However, as stated by Chief Justice Fly, in disposing of this case upon a former appeal, whenever it is made to appear that the public interest requires a removal of the depot, it can be removed, notwithstanding the covenant with private individuals not to remove it.

The first assignment is overruled, and, for the reasons above expressed, the second, third, fourth, twelfth, seventeenth, twenty-eighth, and twenty-ninth assignments are also overruled.

[3] The proposition presented under the fifth assignment and relevant to the twenty-first is:

"Where the law authorizes a railroad company to maintain separate freight and passenger depots at a station and authorizes the Railroad Commission of Texas to require railway companies to erect and maintain separate freight and passenger depots, a contract requiring a railroad company to maintain a depot at a particular place cannot be construed to mean 'passenger depot.'"

It appears from the pleadings and from the evidence that a passenger depot was on the 17.4-acre tract when the restrictive covenant was made and when the appellees purchased their lots. It further appears that the property claimed to be entitled to the benefit of the restrictive covenant is used for mercantile, retail, and wholesale establishments and residences, all of which are benefited by passengers brought into the vicinity.

It is not shown that freight handled would benefit the contiguous property; hence, in the absence of evidence clearly showing that the covenant related solely to a freight depot, the finding of the trial court, by implication, that the words of the deed, viz. "maintenance by said railway company of a depot," means the same kind of a depot as was established when the covenant was made, will not be disturbed.

Both the last-mentioned assignments are overruled.

[4] The proposition submitted under the sixth and seventh assignments is:

"Where a party joins in an agreement made with a railroad company to secure the construction thereof into a county seat, to furnish said railway company free depot grounds and right of way, and such railway company under such agreement constructs its line of railway into such county seat and locates its depots upon ground belonging to such party and records the agreement so entered into, its title to such depot grounds free of limitations or restrictions is established, and the party to such agreement cannot by a subsequent conveyance attach covenants to or impose conditions upon the railway company's title to such land."

The agreement referred to in the above proposition, coupled with entry into possession of the depot grounds at Kerrville, vested in the railway company the right to possession, but it may well be doubted that the agreement of itself vested the legal title to the land in the railway company. The legal title passed from Charles Schreiner to the company by the deed of 1892, which deed contained the restrictive covenant. Furthermore, the fact that the company duly registered deed as a muniment of its title, thereby giving notice that it had made the covenant as part consideration for the title, and thereby induced purchasers to buy contiguous lands of the grantor in the deed, thus recorded, upon the faith of the recitals in that deed, estops the railway company to deny that it is bound by that covenant, even though it had in fact previously obtained the full title through another instrument. S. A. & A. P. Ry. Co. v. Mosel, 180 S. W. 1139, § 5.

The sixth and seventh assignments are overruled.

[5] By the eighth assignment it is contended that Charles Schreiner had parted with the title to the property owned at the time of the filing of this suit by appellees Welge and Mosel before 1892, the date when the covenant was published by registry of the deed, and for that reason appellant contends that it appears, as a matter of law, that the covenant was never made for the benefit of the property of Welge and Mosel. We think, as a matter of law, Charles Schreiner could, by covenant, burden the depot tract sold by him to the railway company for the benefit of any land in the vicinity of the depot, whether owned by him or not. It may be true that the lots belonging to Welge and Mosel were sold by Charles Schreiner prior to 1892, but they were a part of the depot subdivisions owned and made by Schreiner,

and the trial court evidently found that the covenant was to benefit all the land in the general scheme of the subdivisions, and was intended for the benefit of these particular lots of the Schreiner depot subdivisions, and in the absence of any contrary evidence we do not feel disposed to disturb that finding.

The following statement of the evidence from the brief of appellees is in accord with the record, and is pertinent:

"Appellant built its road into Kerrville in 1887 and duly designated its depot grounds on the Hays survey, having been placed in possession by Charles Schreiner, who acquired title to this survey in 1883. In 1884 Schreiner subdivided a part of the Hays survey into blocks and lots from the Guadalupe river to Jefferson street, about two blocks from the railroad track; and on the west side where the public buildings and principal business houses were then and are now located. A plat of this addition was duly recorded and a certified copy was read in evidence. About the time the railroad was completed to Kerrville Schreiner platted a second addition extending from Jefferson street to the depot grounds and opened Schreiner street fronting the depot and depot grounds. This addition includes blocks 51 and 52 on the Hays and block 10 on the Cage survey, fronting Schreiner street, and several lots opposite the depot, and a certified copy of this addition was read in evidence.

"The plat of this depot addition was not recorded till 1895, but the record shows that it was platted prior to August 2, 1888, when Schreiner conveyed two lots of block 52 fronting Schreiner street, and in each year afterwards made conveyances of lots until February 9, 1904, when he conveyed to Charles Morris block 10 and all the deeds describe the lots as part of Schreiner's addition. When the Welges, in February, 1891, bought from Robinson two lots fronting the depot, there was a storehouse on the lots, and Schreiner's addition had then been platted. Schreiner conveyed these two lots to Robinson September 1, 1888, and the deed describes them as part of Schreiner's addition. At and before the date of the deed from Schreiner to appellant, November 19, 1892, Schreiner was occupying block 10 for business purposes, and he continued such occupancy until he conveyed this block to Morris February 9, 1894. The deed conveying to Schreiner part of the Cage survey, including block 10, is not in the record, but when Welge bought the Robinson lots and store in January, 1891, Schreiner's place of business was on block 10, and it was there when the witness visited Kerrville before that time. The W. T. Supply Company bought this block in 1913 from the vendees of Morris. This block immediately adjoins the depot grounds on its southern boundary and abuts on North street, on which is located the railroad track. The depot grounds run nearly north and south, 1,900 feet long and 400 feet wide, and the southern boundary is on the division line of the Hays and Cage surveys.

"Appellant's brief states that Schreiner prior to November 19, 1892, the date of his deed to appellant, conveyed all the lots of blocks 51 and 52 except one lot in block 51 conveyed to Remschel, June 29, 1893, but he also held the legal title to the two lots in block 52 fronting Schreiner street, which he had conveyed to Martindale, he having released the vendor's lien retained in the deed September 13, 1893.

"Appellee Mosel acquired his lots opposite the depot in 1904, and Welge his residence lots in 1891, and the supply company acquired its lots in 1912 and 1913, all holding through regular transfers from Schreiner. The evidence shows without dispute that appellees bought and improved their lots on account of their proximity to the depot, that they paid value, and that the removal of the depot would diminish the value of their property, which was used for business purposes, except the lots occupied by Mosel and Welge and their families. The supply company bought block 10 and lots adjoining in block 52 from Morris for business purposes and relying on appellant's covenant to maintain the depot on the depot grounds."

[6] Even if the court was in error in its construction of the effect of the covenant, we could not reverse the judgment in so far as it restrained the removal of the depot; for the other appellee, the supply company, bought land that was owned by Schreiner at the time of the covenant, and was entitled to the benefit of the restrictive covenant.

The eighth assignment is overruled, and, for the same reasons, the ninth, tenth, eleventh, thirteenth, nineteenth, twenty-second, and twenty-third are overruled.

The proposition raised by the fourteenth, fifteenth, twentieth, and twenty-fourth assignments is that the undisputed evidence shows that the contemplated removal of the depot would be beneficial to the interests of a majority of the citizens.

It is stated in the opinion in this case, on the appeal from an order granting a temporary injunction, that the burden of showing that the removal was beneficial to the majority rested upon the railway company. S. A. & A. P. Ry. Co. v. Mosel, 180 S. W. 1138; Taylor v. Railway, 54 Fla. 635, 45 South. 574, 16 L. R. A. (N. S.) 307, 127 Am. St. Rep. 155, 14 Ann. Cas. 472.

[7] The evidence does show that "the biggest portion of the town is down" nearer the site of the proposed new depot. But it is not clear that the nearer proximity to the biggest portion of the town is more beneficial to the majority of the citizens than the present site. The jury found that the removal was not more to the interests of the majority of the citizens of Kerrville, and there was testimony of some inconveniences from the contemplated site, and no evidence that the present site was inconvenient or objectionable. We cannot say there was no evidence to support the jury's verdict, though reasonable minds might easily form a different conclusion from the meager evidence.

We overrule the assignments.

[8] The sixteenth assignment complains of the form of the special issue submitted to the jury. The proposition is:

"Where the issue joined by the pleadings and proof is whether or not a new depot constructed by a railroad company is more beneficial to the inhabitants of a town by reason of its location than its old depot, it is error to submit the issue to the jury as to whether such new depot as located is more beneficial than would be a depot located at the most advantageous part of the property known as the 'old depot ground.'"

The covenant relied upon by appellees required the depot to be maintained upon the 17.4-acre tract described in the deed through which appellant claims. The act sought to be restrained was the removal of the depot off from this tract to another block several hundred feet away. Unless the public interest

required this removal, the company had no right to breach its covenant. The form of the special instruction fairly submitted the question of whether the public interest required the removal. The jury answered that the public interest did not require the removal sought to be restrained. We do not believe that the error complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case. Rule 62a (149 S. W. x).

The question presented by the eighteenth, twenty-fifth, twenty-sixth, and twenty-seventh assignments is stated by appellant in the proposition under the twenty-sixth and twenty-seventh assignments, as follows:

"Where a Railroad Commission is created by the laws of a state and authorized and empowered to require railway companies to remove their freight or passenger depots in any city or town from one location to another whenever the public interest or convenience will be best served by such change, a court of equity will not, by decree of specific performance or injunction, deprive such tribunal of the authority vested in it by law."

[9, 10] This proposition has been determined adversely to appellant's contention in paragraph 5, Mosel v. S. A. & A. P. Ry. Co., 177 S. W. 1051, wherein it was declared that:

"The Railroad Commission is the authority to enforce the law as to removal of depots, but it is not its duty to enforce the contracts of railroad companies with private parties."

We do not doubt that should the public benefit require the removal and the Railroad Commission should order the removal, the present judgment in this case would not prevent obedience to the commission's order.

The assignments are overruled.

The judgment of the trial court is affirmed.